627 A.2d 223

**PENNSYLVANIA STATE POLICE, BUREAU OF LIQUOR CONTROL ENFORCEMENT,**

v.

**Edward A. PREKOP & Howard G. Massung T/A Chez Lounge, Appellants.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs April 2, 1993.

Decided June 8, 1993.

William R. Harper, for appellants.

Stanley J. Wolowski, Asst. Counsel, for appellee.

Before DOYLE and SMITH, JJ., and NARICK, Senior Judge.

NARICK, Senior Judge.

Edward A. Prekop and Howard G. Massung, t/a Chez Lounge (Licensees) appeal from the order of the Court of Common Pleas of Allegheny County that dismissed Licensees' appeal from the order of the Pennsylvania Liquor Control Board (PLCB), imposing a fine upon Licensees for violation of the Liquor Code, Act of April 12, 1951, P.L. 90, *as amended,* 47 P.S. §§ 1–101–9–902. We affirm.

Licensees are holders of a restaurant liquor license for premises at 408 Fifth Avenue, Moon Township. On June 10, 1989, at approximately 1:15 a.m., Officer Mortty Ivy entered the licensed premises in an undercover capacity. At 2:00 a.m., the barmaid gave the last call; however, none of the patrons departed the premises. At 2:15 a.m., Officer Ivy purchased two alcoholic drinks. Officer Ivy again made purchases at 2:30 and 2:45 a.m. Also, during the period between 2:00 a.m. and 2:45 a.m., Officer Ivy observed other patrons being served alcoholic beverages. In addition, music was supplied from a coin-operated jukebox for dancing. Officer Ivy danced and observed other couples dancing. Office Ivy departed the premises at 3:00 a.m., while approximately 25 to 30 patrons remained on the premises.

Officer Ivy made a second visit to the licensed premise on July 22, 1989. He entered at 1:15 a.m. and the bar maid gave the last call at 2:00 a.m.; however, this time the service of alcoholic beverages ceased. Officer Ivy departed the premises at 2:30 a.m., having observed no violations of the Liquor Code.

On August 15, 1989, the Bureau of Liquor Control Enforcement (Bureau) issued a citation to Licensees, charging Licensees with the following two offenses:

Count I—On June 10, 1989, Licensees sold, furnished and/or gave alcoholic beverages between 2:00 a.m. and 7:00 a.m., in violation of Sections 406(a)(2) and 493(16) of the Liquor Code;

Count II—On June 10, 1989, Licensees permitted dancing during hours when the sale of alcoholic beverages was prohibited in violation of Section 5.35(a) of the Liquor Control Board Regulations.

On July 12, 1990, an evidentiary hearing was held before an administrative law judge (ALJ). At the hearing, Officer Ivy testified, as did the barmaid and Licensees' manager. Licensees contended at the hearing that even if such violations occurred on June 10, 1989, that they were not notified of the violation within thirty days of the completion of the investigation, as required by Section 471(b) of the Liquor Code, 47 P.S.

§ 4–471(b). However, the ALJ found that the Licensees had committed the two violations as charged, finding that the Bureau's investigation ended on July 22, 1989, the date of Officer Ivy's second visit to the licensed premises, thus, giving Licensees timely notice of the violations.[1] The PLCB affirmed and the trial court dismissed Licensees' appeal.

■ Licensees now argue that the trial court erred in its interpretation of Section 471(b) of the Liquor Code.[2] Section 471(b) of the Liquor Code states, in pertinent part:

No penalty provided by the this section shall be imposed for any violation provided for in this Act unless the bureau notifies the licensee of its nature within thirty days of the completion of the investigation.

Licensees argue that the five-week lapse of time between the initial visitation when the alleged violations occurred and the subsequent visit by Officer Ivy when no violations were witnessed requires findings contrary to those of the ALJ. Licensees contend that the investigation ended on June 10, 1989, the date of the alleged violation, and, therefore, more than thirty days had passed and no penalty can be imposed. Licensees argue that Section 471(b) of the Liquor Code should be construed to mean that the Bureau must notify a licensee within thirty days of the completion of the investigation *of a specific violation* because of this Court's holding in *Pennsylvania Liquor Control Board v. Gatling Saloon and Dance*

1. For the sales after hours violation, Count I, the ALJ imposed a $1,000 fine. With regard to Count II, which represented a violation for permitted dancing after hours, the ALJ imposed a $100 fine.

2. In addressing Licensees' claim that the Bureau failed to comply with Section 471(b) of the Liquor Code, the 1987 amendments, Act of June 29, 1987, P.L. 32, No. 14 (Act 14), are relevant and controlling. In *In Re Appeal of Iggy, Inc.*, 140 Pa.Commonwealth Ct. 168, 592 A.2d 122 (1991), we held that in an Act 14 enforcement matter, the trial court's scope of review is limited to the record as made before the ALJ to determine whether the ALJ's findings are supported by substantial evidence, whether the ALJ committed an error of law or whether the ALJ abused his discretion. Thus, any factual findings made by the ALJ relative to the completion of the Bureau's investigation and notification of the violation to the licensees must be accepted, as long as those findings are supported by substantial evidence.

*Hall Corp.*, 98 Pa.Commonwealth Ct. 377, 511 A.2d 272 (1986).[3]

In *Gatling*, we affirmed the trial court's holding that no penalty could be imposed because notice was not given to the licensee within the applicable time limit after the investigation's completion. In *Gatling*, more than one officer was involved in the investigation. The supervising officer visited the licensed premises and witnessed a violation on June 22, 1983. One week later, another officer witnessed yet another violation, filing his report with the supervising officer. Sometime after the second investigation, the original supervising officer was removed from her position with the PLCB. No further activity occurred until August 16, 1983, when a new officer visited the licensed premises, finding the premises closed. No further visits were made and a violation notice was sent to licensee on August 19, 1983. The trial court held that the licensees in *Gatling* had not received timely notice from the PLCB, rejecting the PLCB's argument that the investigation was a continuing one and had not been completed until August 16, 1983. We affirmed, however, emphasizing that this *factual determination* did not represent a legal rule that the investigations terminate on or immediately after the date on which a violation was last observed. Officer Ivy testified, regarding his extremely busy schedule and that he always visited establishments twice before issuing a citation. The ALJ accepted Officer Ivy's testimony as credible and supportive of an on-going investigation. Thus, we hold that Licensees' reliance upon *Gatling* is misplaced because the ALJ made a factual finding that the investigation here was on-going.

3. At the time of the *Gatling* decision, the Liquor Code provided that investigations necessary to enforcement are conducted by agents of the PLCB. In addition, Section 471(b) required that the PLCB investigations be limited to ninety days and notice of the alleged violation to be given to the licensee be within ten days of the completion of the investigation. The 1987 amendments transferred enforcement to the Bureau, removing the ninety-day limit on the length of the investigation, but extending to thirty days the period *after completion of an investigation* within which the licensee had to be notified of the alleged violation.

■ Furthermore, if the legislature had intended that the Bureau notify a licensee of the nature of a violation within thirty days from the date the Bureau learns of a violation, the legislature could have so stated. In Section 471(a) of the Liquor Code, 47 P.S. § 4-471(a), the legislature specifically provided that "[u]pon learning of any violation of this Act or any laws of this Commonwealth . . . ," the Bureau has one year to cite a licensee. It is a well-settled principle of statutory construction that where the legislature includes specific language in one section of a statute and excludes it from another, it should not be implied where excluded. *Bureau of Liquor Control Enforcement v. Beer and Pop Warehouse, Inc.,* 145 Pa.Commonwealth Ct. 355, 603 A.2d 284, 287 (1992). Thus, because the legislature used the specific phrase "upon learning of any violation" in Section 471(a) and such language was not made a part of the relevant language of Section 471(b), Licensees' proposed interpretation, which would require that the Bureau notify a Licensee within thirty days of learning of the violation, is improper.

■ Lastly, in order to properly investigate a particular complaint or allegation, the Bureau may need to conduct several visits to a licensed premises. Because Section 471(b) of the Liquor Code provides for broad penalties for cumulative Liquor Law violations, it would be inappropriate to hold that any initial viewing of a violation requires immediate notification to the licensee. While *Gatling* instructed the PLCB not to procrastinate in issuing notice of violations, we do not wish to hamper the Bureau in its investigatory efforts.

Accordingly, the order of the trial court is affirmed.

## ORDER

AND NOW, this 8th day of June, 1993, the order of the Court of Common Pleas of Allegheny County in the above-captioned matter is hereby affirmed.