# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Shannon McGrath, : 
                Petitioner : 
                 : 
            v. : No. 1001 C.D. 2015
                 : Submitted: May 11, 2016
Bureau of Professional and : 
Occupational Affairs, State Board of : 
Nursing, : 
                Respondent : 

BEFORE:      HONORABLE MARY HANNAH LEAVITT, President Judge
                      HONORABLE RENÉE COHN JUBELIRER, Judge
                      HONORABLE ROBERT SIMPSON, Judge
                      HONORABLE P. KEVIN BROBSON, Judge
                      HONORABLE PATRICIA A. McCULLOUGH, Judge
                      HONORABLE ANNE E. COVEY, Judge
                      HONORABLE MICHAEL H. WOJCIK, Judge

OPINION BY
JUDGE COHN JUBELIRER                FILED:  August 24, 2016

Shannon McGrath, proceeding pro se, petitions for review of the Order of the Bureau of Professional and Occupational Affairs, State Board of Nursing (Board) that affirmed the suspension of Ms. McGrath's license to practice professional nursing for no less than 10 years from the date of her conviction of violating The Controlled Substance, Drug, Device and Cosmetic Act[1] (Drug Act)

---

[1] Act of April 14, 1972, P.L. 233, as amended, 35 P.S. §§ 780-101 – 780-144.

and until her license is reinstated by the Board.[2]  On appeal, Ms. McGrath argues that the Board erred in:  (1) changing its interpretation of Sections 15.1(b) and 15.2 of The Professional Nursing Law[3] (Nursing Law) to require that her license be automatically suspended for a mandatory period of 10 years before she can seek the reissuance of her license without promulgating a valid rule or regulation setting forth this new interpretation; and (2) applying this Court's decision in Packer v. Bureau of Professional and Occupational Affairs, Department of State, State Board of Nursing, 99 A.3d 965 (Pa. Cmwlth. 2014), petition for allowance of appeal denied, 109 A.3d 680 (Pa. 2015), which affirmed that new interpretation.  Because we conclude that Packer's punitive interpretation of the ambiguous statutory provisions of the Nursing Law violates the principle that ambiguities in penal statutes must be strictly construed against the government, Section 1928(b)(1) of the Statutory Construction Act of 1972 (Statutory Construction Act), 1 Pa. C.S. § 1928(b)(1); Richards v. Pennsylvania Board of Probation and Parole, 20 A.3d 596, 600 (Pa. Cmwlth. 2011) (en banc) (discussing the common law rule of lenity), we overrule Packer.  Therefore, we reverse the Board's Order to the extent that it mandates a 10-year suspension of Ms. McGrath's license and requires, based on Packer, Ms. McGrath to reapply for a new license under Section 6(c)(1) of the Nursing Law, rather than request reissuance of her suspended license pursuant to Section 15 of the Nursing Law, 63 P.S. §§ 216(c)(1), 225.

---

[2] The Order further directed Ms. McGrath to cease practicing nursing and to return her wall and registration certificates, along with her wallet cards, to the Board within 10 days of the Order.

[3] Act of May 22, 1951, P.L. 317, as amended, added by Section 13 of the Act of December 20, 1985, P.L. 409, 63 P.S. §§ 225.1(b), 225.2.

## I.    Background

### A.    *Factual Background*

Ms. McGrath is a licensed registered nurse.  On August 29, 2013, the Commonwealth filed a Petition for Automatic Suspension (Petition) requesting that Ms. McGrath's license automatically be suspended pursuant to Section 15.1(b) of the Nursing Law, 63 P.S. § 225.1(b) (requiring the automatic suspension of a nursing license following a felony conviction for violating the Drug Act). Attached to the Petition were certified copies of records from the Court of Common Pleas of Allegheny County indicating that Ms. McGrath had been "convicted of one count of Acquisition or Possession of a Controlled Substance by Misrepresentation, Fraud, Forgery, Deception or Subterfuge, a felony under Section 13(a)(12) of" the Drug Act, 35 P.S. § 780-113(a)(12).[4]  (Final Adjudication at 1 (footnote omitted).)  On September 20, 2013, the Board issued a Notice and Order of Automatic Suspension (Notice and Order) automatically suspending Ms. McGrath's license and advising her of her hearing and appeal rights.  (Notice and Order, C.R. Item 1.)  Ms. McGrath requested a hearing and, because her criminal charges were being appealed, a stay of the suspension.

### B.    *Statutory Language and the Board's Varying Interpretations Thereof*

Before detailing the Board's determination, we set forth the relevant statutory language from the Nursing Law that governs the Board's authority to suspend, revoke, and reissue a professional nursing license.  Section 14 of the

---

[4] Ms. McGrath acknowledged "her plea of guilt to one count" of violating Section 13(a)(12) of the Drug Act in a "Guilty Plea Explanation of Defendant's Rights," and she received probation without a verdict. (Final Adjudication at 1 n.2 (internal quotation omitted).)

3

Nursing Law sets forth the discretionary bases for suspending or revoking a professional nursing license. Under that section, the Board may suspend or revoke a license for, *inter alia*: "being convicted of, pleading guilty or *nolo contendere*, to a crime of moral turpitude"; or "receiv[ing] probation without verdict . . . in the disposition of felony charges." 63 P.S. § 224(a)(5). Section 15 describes the process of suspending, revoking, and reissuing licenses, stating:

> All suspensions and revocations shall be made only in accordance with the regulations of the Board, and only by majority vote of the members of the Board after a full and fair hearing before the Board. All actions of the Board shall be taken subject to the right of notice, hearing and adjudication, and the right of appeal therefrom, in accordance with the provisions in Title 2 of the Pennsylvania Consolidated Statutes (relating to administrative law and procedure), or any amendment or reenactment thereof, relating to adjudication procedure. *The Board, by majority action and in accordance with its regulations, may reissue any license which has been suspended. If a license has been revoked, the Board can reissue a license only in accordance with section 15.2.*

63 P.S. § 225 (emphasis added). This section thus distinguishes between suspended and revoked licenses, permitting the Board to reissue any suspended license, while limiting the circumstances under which the Board can reissue revoked licenses. Section 15.1(b) of the Nursing Law addresses *automatic suspensions* of licenses and provides:

> A license issued under this act shall automatically be suspended upon the legal commitment to an institution because of mental incompetency from any cause upon filing with the Board a certified copy of such commitment, *conviction of a felony under [the Drug Act]* or conviction of an offense under the laws of another jurisdiction, which, if committed in Pennsylvania, would be a felony under [the Drug Act]. As used in this section the term "conviction" shall include a judgment, an admission of guilt or a plea of nolo contendere. Automatic suspension under this subsection shall not be stayed

4

pending any appeal of a conviction. *Restoration of such license shall be made as* __hereinafter__ *provided in the case of revocation or suspension of such license.*

63 P.S. § 225.1(b) (emphasis added). Immediately following Section 15.1 is Section 15.2, which, by its terms, applies to *revoked* licenses and states:

> Unless ordered to do so by Commonwealth Court or an appeal therefrom, the Board shall not reinstate the license of a person to practice nursing or dietetics-nutrition which has been *revoked*. *Any person whose license has been* __revoked__ *may reapply for a license, after a period of at least five (5) years,* __but must meet all of the licensing qualifications of this act for the license applied for__*, to include the examination requirement, if he or she desires to practice at any time after such revocation.*

63 P.S. § 225.2 (emphasis added). The licensing qualifications for *applicants* are found in Section 6 of the Nursing Law, subsection (c), which provides, in pertinent part, that:

> (c) The Board shall not issue a license or certificate to an applicant who has been convicted of a felonious act prohibited by [the Drug Act] or convicted of a felony relating to a controlled substance in a court of law of the United States or any other state, territory or country unless:
>
> *(1) at least ten (10) years have elapsed from the date of conviction;*

63 P.S. § 216(c)(1) (emphasis added).

Previously, the Board interpreted this statutory language as permitting it to consider each automatic license suspension on a case-by-case basis to determine the length of the suspension and to approve consent decrees setting forth the term of the suspension. Packer, 99 A.3d at 967, 970. The Board's interpretation relied on Section 15, which gives the Board discretion in imposing and reviewing license suspensions under the Nursing Law. 63 P.S. § 225. However, in 2013, the Board

5

changed its interpretation of these provisions without, as observed in <u>Packer</u>, engaging in either formal interpretation, i.e., promulgating regulations, or informal interpretation, i.e., issuing policy guidelines, regarding its new interpretation. <u>Packer</u>, 99 A.3d at 969-71. Rather, the Board "altered its application of the [Nursing] Law based upon a directive from its parent agency, the Department of State [(Department)], Bureau of Professional and Occupational Affairs [(Bureau)]." <u>Id.</u> at 970. According to the Board, "the [Bureau] made the determination that the language in all the acts with automatic suspension provisions authorized the boards to impose a [10] year automatic suspension and that all healthcare providers should be treated equally." <u>Id.</u> at 970 n.10 (internal quotation omitted). Thus, "until . . . the Bureau or the Department issued an unidentified directive in 2013 to all health profession boards" indicating that "the Board (and apparently prosecutors in the Bureau)" had to apply Sections 15.1 and 15.2 in a non-discretionary manner, the Board and the Bureau's prosecutors interpreted the statutory language as authorizing the exercise of discretion in determining the length of a suspension issued pursuant to Section 15.1(b). <u>Packer</u>, 99 A.3d at 970.

### C. *The Board's Determination Here*

A Board Hearing Examiner held a formal hearing on November 7, 2013, at 1:30 p.m., at which Ms. McGrath was not present. The Commonwealth offered into evidence the Petition, the Notice and Order, and certified records from Ms. McGrath's criminal proceedings and rested. Following the admission of these

6

documents, the Hearing Examiner concluded the hearing at 1:49 p.m.[5]  Ms. McGrath arrived at 2:15 p.m., but the hearing had already concluded.[6]  Ms. McGrath requested a new hearing on November 22, 2013.  By Proposed Memorandum and Order dated February 18, 2014, the Hearing Examiner denied the request for a new hearing and affirmed the Notice and Order.  The Board indicated that it was going to review the Proposed Memorandum and Order.  Ms. McGrath filed a Brief on Exceptions, to which the Commonwealth filed a Reply Brief.

After reviewing the entire record and applying its new non-discretionary interpretation of the Nursing Law, the Board issued its Final Adjudication and Order affirming the mandatory 10-year suspension of Ms. McGrath's license based on her felony conviction for a single count of violating Section 13(a)(12) of the Drug Act.  The Board held that, pursuant to Section 15.1(b) of the Nursing Law, this felony conviction *mandated* that her license be automatically suspended and could "only be restored pursuant to the requirements for suspension and revocations." (Final Adjudication at 5.)  Citing Section 15.2 of the Nursing Law, the Board concluded that "*revoked* licensees [must] meet all of the licensure requirements at the time of restoration" and that Ms. McGrath was "precluded by Section 6(c)(1) of the [Nursing Law], 63 P.S. § 216(c)(1), from being relicensed

---

[5] The Board acknowledges that the hearing began at 1:45 p.m. and ended at 1:49 p.m., thus, the Commonwealth took only four minutes to present its case. (Board's Br. at 5, n.4.)

[6] Ms. McGrath indicates that on the morning of the hearing, she telephoned the Board's receptionist three times to advise that she was running late, there was no answer, and she left a message advising the Board that she would be late for the hearing. (Ms. McGrath's Request for New Hearing, C.R. Item 5; Br. of Exceptions at 1, C.R. Item 9; Ms. McGrath's Br. at 6.)  She further points out that she agreed to the plea agreement based on the representations of the district attorney and her criminal defense lawyer that her plea agreement would have no effect on her professional license. (Ms. McGrath's Br. at 5.)

7

for [10] years." (Final Adjudication at 5 (emphasis added).) Section 6(c)(1), which applies to *new* applicants, requires a 10-year period between an application for a new license and a felony conviction under the Drug Act. 63 P.S. § 216(c)(1). Although Ms. McGrath objected to the change in the Board's interpretation of their review under Section 15.1, the Board responded that Packer held that the Board's new interpretation was reasonable. (Final Adjudication at 6 (citing Packer, 99 A.3d at 970 n.11).) Finally, the Board rejected, as not relevant, Ms. McGrath's argument that she was appealing her conviction, claiming that it had no discretion where there was a felony conviction under the Drug Act. (Id.) Ms. McGrath now petitions for review of that Order.[7]

## II. Discussion

### A. *Packer and Principles of Statutory Construction*

The Board relied on Packer to deny Ms. McGrath's appeal because, in that case, this Court affirmed the Board's new interpretation of Sections 15.1(b) and 15.2 of the Nursing Law as requiring a mandatory 10-year suspension of a professional license for a nurse whose license was suspended because of a felony conviction under the Drug Act. (Final Adjudication at 6 (citing Packer, 99 A.3d at 970 n.11).) After reviewing the above-cited statutory language in Packer, we stated that "the statute lacks clarity with regard to which provision or provisions of the [Nursing] Law govern the length of time of an automatic suspension under Section 15.1(b) of the [Nursing] Law, [and] . . . conclude[d] that this provision is

---

[7] "This Court's scope of review is limited to determining whether there has been a violation of constitutional rights, [whether] errors of law [have been] committed, or whether findings of fact are supported by substantial evidence." Bethea-Tumani v. Bureau of Prof'l and Occupational Affairs, 993 A.2d 921, 925 n.6 (Pa. Cmwlth. 2010).

8

ambiguous." Packer, 99 A.3d at 969. Thus, we found it necessary to resort to the rules of statutory construction to ascertain the General Assembly's intent and resolve the ambiguity.[8] Those well-settled rules provide the following.

> When the words of the statute are not explicit, the intention of the General Assembly may be ascertained by considering, among other matters:

> (1) The occasion and necessity for the statute.
> (2) The circumstances under which it was enacted.
> (3) The mischief to be remedied.
> (4) The object to be attained.
> (5) The former law, if any, including other statutes upon the same or similar subjects.
> (6) The consequences of a particular interpretation.
> (7) The contemporaneous legislative history.
> (8) Legislative and administrative interpretations of such statute.

1 Pa. C.S. § 1921(c). In addition to these principles, we are guided by others, including that: statutes should be interpreted as a whole, Commonwealth v. Lurie, 569 A.2d 329, 331 (Pa. 1990); courts "have no authority to add or insert language into a statute" and should not, through interpretation, add a requirement that the

---

[8] The touchstone of interpreting statutory language "is to ascertain and effectuate the intention of the General Assembly." Section 1921 of the Statutory Construction Act, 1 Pa. C.S. § 1921(a); Colville v. Allegheny Cnty. Ret. Bd., 926 A.2d 424, 444 (Pa. 2007). "Every statute shall be construed, if possible, to give effect to all of its provisions." 1 Pa. C.S. § 1921(a). A guiding principle of statutory construction is that, "[w]hen the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa. C.S. § 1921(b). Only when the words of a statute are unclear or ambiguous will courts engage in statutory construction to determine the intent of the General Assembly. 1 Pa. C.S. § 1921(c); Zane v. Friends Hosp., 836 A.2d 25, 31 (Pa. 2003). "A statute is ambiguous when there are at least two reasonable interpretations of the text under review." Warrantech Consumer Prod. Services, Inc. v. Reliance Ins. Co. in Liquidation, 96 A.3d 346, 354-55 (Pa. 2014).

General Assembly did not include, <u>Summit School, Inc. v. Department of Education</u>, 108 A.3d 192, 199 (Pa. Cmwlth. 2015); and "where the legislature includes specific language in one section of a statute and excludes it from another, it should not be implied where excluded," <u>Pennsylvania State Police, Bureau of Liquor Control Enforcement v. Prekop</u>, 627 A.2d 223, 226 (Pa. Cmwlth. 1993). It is presumed "[t]hat the General Assembly does not intend a result that is absurd, impossible of execution or unreasonable." Section 1922(1) of the Statutory Construction Act, 1 Pa. C.S. § 1922(1).

Lastly, where a statute imposes punishment, such as the suspension or revocation of a professional license, for specified acts, such statutes are *penal* in nature. <u>See</u> <u>Pa. State Real Estate Comm'n v. Keller</u>, 165 A.2d 79, 80 (Pa. 1960) (holding that the Real Estate Broker's Law,[9] which provided for the investigation of the acts of real estate brokers and the suspension or revocation of their licenses for specified acts, "is penal and must be strictly construed"). Section 1928(b)(1) of the Statutory Construction Act, 1 Pa. C.S. § 1928(b)(1), requires that penal provisions "shall be strictly construed." Consistent with this statutory requirement is the rule of lenity, which originated in common law, and provides that:

> [a]mbiguities should and will be construed *against the government*. This principle has its foundation in the rule of lenity that provides that any ambiguity in a criminal statute will be construed in favor of the defendant. The rule of lenity requires a *clear and unequivocal warning in language that people generally would understand*, as to what actions would expose them to liability for penalties and *what the*

---

[9] Act of May 1, 1929, P.L. 1216, <u>as amended</u>, 63 P.S. §§ 431-448, <u>repealed by</u> Section 901 of the Act of February 19, 1980, P.L. 15. The Real Estate Broker's Law was replaced with the Real Estate Licensing and Registration Act, Act of February 19, 1980, P.L. 15, <u>as amended</u>, 63 P.S. §§ 455.101-455.902.

10

*penalties would be.* Application of the rule of lenity extends beyond the context of criminal statutes.

Richards, 20 A.3d at 600 (emphasis added) (internal quotation omitted). "Underpinning the rule of lenity is the fundamental principle of fairness that gives validity to our laws" by providing individuals the clear and unequivocal warning discussed above. Sondergaard v. Dep't of Transp., Bureau of Driver Licensing, 65 A.3d 994, 997 (Pa. Cmwlth. 2013). "To apply the rule of lenity, it is not enough that a statute is penal it must be ambiguous as well." Id. at 999. With these guiding principles in mind, we turn to Packer's interpretation of the ambiguous language of the Nursing Law and the parties' arguments.

### B.     *Packer's Interpretation of this Statutory Language*

Packer involved a registered nurse who had pled guilty to violating Section 13(a)(12) of the Drug Act, which resulted in her professional license being automatically suspended pursuant to Section 15.1(b) of the Nursing Law. Packer, 99 A.3d at 966. Ms. Packer was advised that her automatic suspension could not be reviewed for 10 years, and she appealed that determination to this Court arguing that the Board had changed its interpretation of the Nursing Law and this new interpretation was erroneous. After concluding that Section 15.1(b) of the Nursing Law was ambiguous, this Court considered various ways of construing that language in order to ascertain the General Assembly's intent. Id. at 969.

The Board, in Packer, initially argued that its interpretation of Sections 15.1(b) and 15.2 was entitled to administrative deference, but this Court rejected that argument, noting that such deference was not warranted given the Board's lack of "formal . . . or even an informal interpretation" and the fact that the interpretation was raised, in the first instance, in a brief on appeal. Packer, 99 A.3d

11

at 970-71. This Court further declined to consider the language of other professional licensing statutes, some of which expressly contained a time period for automatic suspension and others that did not, because

> [w]e do not read anything into the General Assembly's decision not to specify in Section 15.1(b) of the [Nursing] Law the length of an automatic suspension, particularly because Section 15.1(b) mandates suspensions for more than just convictions under the Drug Act. . . . Also, the General Assembly may have concluded that such a provision in Section 15.1(b) would be redundant, given that a person seeking to become fully-licensed following an automatic suspension would be required under Section 15.2 of the [Nursing] Law to comply with Section 6(c) of the [Nursing] Law.

Id. at 973. Ultimately, Packer concluded that the Board's interpretation was more reasonable because it gave effect to the term "hereinafter" in Section 15.1(b), it "appear[ed] that the General Assembly, in mandating license suspensions under Section 15.1(b) for certain drug convictions . . . , viewed [that] circumstance[] to be sufficiently serious that it removed from the Board its discretion not to suspend or revoke a license," and "it would seem unlikely that the General Assembly would then allow the Board to exercise discretion and lift an automatic suspension at any time." Id. at 972. Thus, Packer affirmed the Board's imposition of the restoration procedures for *revoked* licenses to a license *suspended* under Section 15.1(b). The fact that Section 15.2 does not refer to suspended licenses, but only to revoked licenses, was considered "inconsequential" to the Court's analysis. Id. at 973. Further, Packer did not consider the penal nature of these ambiguous provisions in its affirmation of the Board's imposition of an automatic, mandatory 10-year license suspension under Section 15.1(b).

12

*C.    The Parties' Arguments in this Matter*

At our direction,[10] the parties were requested to address whether: (1) this Court's interpretation in Packer was consistent with Section 1928(b)(1) of the Statutory Construction Act and the rule of lenity; and (2) the Board should review reissuance requests for licenses suspended under Section 15.1(b) of the Nursing Law under the discretionary standard set forth in Section 15 or under the non-discretionary, more restrictive provisions of Section 15.2. Thus, in addition to the arguments set forth in their initial briefs related to, respectively, whether the Board erred in relying on Packer and in changing its interpretation of the Nursing Law without promulgating a rule or regulation setting forth that new interpretation, and that Packer mandates the result here, the parties filed supplemental memoranda of law.

---

[10] This Court, by order dated March 16, 2016, directed the parties to address the following issues in supplemental memoranda of law, which would be considered by the Court sitting en banc:

1. Whether this Court's interpretation of [the Nursing Law] set forth in Packer . . . , is consistent with Section 1928(b)(1) of the Statutory Construction Act . . . , 1 Pa. C.S. § 1928(b)(1) (requiring that penal statutory provisions be strictly construed), and the rule of lenity, see Richards. . . . (requiring that ambiguities in penal provisions be construed against the government and that the statutory provision use generally understandable language to identify the actions that expose a person to penalties and what the penalties would be).

2. Whether the Board should review reinstatement requests related to automatic suspensions made pursuant to Section 15.1(b) of the Nursing Law under the general reinstatement provisions of Section 15 or under the more restrictive provisions governing the reinstatement of revoked licenses at Section 15.2, 63 P.S. §§ 225, 225.1(b), 225.2.

(Order, Mar. 16, 2016.)

Ms. McGrath argues that Packer's interpretation is inconsistent with Section 1928(b)(1) of the Statutory Construction Act, as the sections involved are penal in nature and yet Packer imposed a harsher punishment than others available in the Nursing Law. She asserts that, despite the other provisions of the Nursing Law that address suspensions, Packer's interpretation singles out these particular suspensions to impose a mandatory 10-year suspension, which does not consider the context of the entire Nursing Law. Ms. McGrath maintains that the General Assembly is aware of the difference between a suspended license and a revoked license, as it distinguished between the two in Section 15 of the Nursing Law. In that section, Ms. McGrath asserts, the General Assembly sets forth one way of reissuing suspended licenses, under Section 15, and a second way of reissuing revoked licenses, under Section 15.2. According to Ms. McGrath, "'where a section of a statute contains a given word, the omission of such word from a similar section of the statute shows a different legislative intent,'" and the General Assembly did not include the phrase "suspended license" in Section 15.2 and that phrase should not be read into this provision. (Ms. McGrath's Supplemental Mem. of Law at 6 (quoting Com. v. Berryman, 649 A.2d 961, 965 (Pa. Super. 1994)).) Absent specific language in Section 15.2 requiring that section to apply to suspended licenses, Ms. McGrath contends that the general provisions related to the Board's review of suspended licenses of Section 15 should apply to an automatic suspension imposed under Section 15.1(b).

The Board argues that there is no need to apply Section 1928(b)(1) and the rule of lenity because, following the principles of statutory construction, this Court concluded in Packer that when the relevant provisions of the Nursing Law are read

14

together, Section 15.1(b) of the Nursing Law is not ambiguous.[11]    This interpretation, according to the Board, is consistent with the Supreme Court's decision in Whalen v. Department of Transportation, Bureau of Driver Licensing, 32 A.3d 677 (Pa. 2011), and this Court's decisions in, among others, Harmer v. Pennsylvania Board of Probation and Parole, 83 A.3d 293 (Pa. Cmwlth. 2014); Sondergaard, 65 A.3d 998-99; Richards, 20 A.3d at 600-01; and Anderson v. Pennsylvania Board of Probation and Parole, 472 A.2d 1168 (Pa. Cmwlth. 1984). The Board asserts that, in these cases, the respective courts held that where the general rules of statutory construction can ascertain the General Assembly's intent, it is not necessary to resort to the rule of lenity or Section 1928(b)(1) of the Statutory Construction Act.    The Board further asserts that, even if Section 15 applies to the automatic suspensions imposed under Section 15.1(b), the Board could still require those licensees to wait 10 years before the Board reissues their licenses through the discretionary review process provided in Section 15.    It contends that treating licensees with suspended licenses for felony Drug Act convictions the same as new applicants by imposing a 10-year period between conviction and reissuance/grant of a professional nursing license comports with the General Assembly's intent to limit the Board's discretion under these circumstances.

---

[11] We question the Board's contention in this regard as it is apparent from our prior discussion that Packer did find the relevant language ambiguous and, therefore, had to utilize the rules of statutory construction to ascertain meaning of that language.  Moreover, to the extent that the Board maintains that the Supreme Court *upheld* Packer, we observe that the Supreme Court did not "uphold" this Court's decision; it denied the petition for allowance of appeal, which has no precedential value.  Com. v. Tilghman, 673 A.2d 898, 904 (Pa. 1996) (stating that orders dismissing an appeal as improvidently granted have the same effect as an order denying a petition for allowance of appeal and that such orders have no precedential value).

15

*D.    Analysis*

Packer correctly found that these provisions of the Nursing Law are ambiguous and, therefore, subject to principles of statutory construction in order to ascertain the General Assembly's intent.[12]   Ms. McGrath and Ms. Packer each pleaded guilty to a single violation of Section 13(a)(12) of the Drug Act which is a felony; therefore, Section 15.1(b) of the Nursing Law applies.   Section 15.1(b) states that, because of the conviction, her nursing license "shall automatically be *suspended.*"   63 P.S. § 225.1(b) (emphasis added).   Yet, Section 15.1(b) also contains the following sentence:   "*Restoration* of such license shall be made *as hereinafter provided* in the case of *revocation or suspension* of such license."   Id. (emphasis added).   Moreover, Section 15 of the Nursing Law does distinguish between suspended and revoked licenses.   Section 15 provides that "[t]he Board, by majority action and in accordance with its regulations, *may reissue **any** license* which has been *suspended.   If* a license has been *revoked*, the Board can reissue a license *only in accordance with section 15.2.*"   63 P.S. § 225 (emphasis added).   Section 15.2 applies by its terms to *revoked* licenses, prohibiting the Board from reissuing a *revoked* license, and instead, providing that "[a]ny person whose license has been *revoked* may reapply for a license, after a period of at least five (5) years, but must meet *all* of the licensing qualifications of this act for the license applied for . . . ."   63 P.S. § 225.2 (emphasis added).   *New applicants* for a nursing license fall within Section 6(c) of the Nursing Law, which requires a *10-year*

---

[12] We acknowledge both the Board's and Ms. McGrath's assertions that the statutory provisions at issue are not ambiguous, although each believes the provisions mean something totally different.  Notwithstanding their assertions, we agree with Packer that an ambiguity exists and that we must utilize the rules of statutory construction to ascertain what the General Assembly's intent was when it enacted these provisions.  1 Pa. C.S. § 1921(c); Zane, 836 A.2d at 31.

16

*waiting period* between a conviction under the Drug Act and the issuance of a nursing license. 63 P.S. § 216(c).

Initially, the interpretation may seem clear. Under Section 15.1(b), Ms. McGrath, like Ms. Packer, had her nursing license automatically *suspended* as a result of her conviction. Under Section 15, the Board may reissue any *suspended* license, which, as Ms. McGrath argues, gives the Board discretion to make a determination on a case-by-case basis. In fact, this rather simple interpretation is the interpretation the Board previously used until directed to do otherwise by "the Bureau or the Department [in an] unidentified directive in 2013." Packer, 99 A.3d at 970-71.

However, Section 15.1(b) also states that "*[r]estoration* of such license shall be made *as hereinafter provided* in the case of *revocation or suspension* of such license." 63 P.S. § 225.1(b) (emphasis added). The phrases "as *hereinafter* provided" and "*revocation or suspension*" create an ambiguity because the section after 15.1 is 15.2, which applies to revocations but does not even mention suspensions. While Ms. McGrath argues that the Board may reissue the *suspended license* under Section 15, the Board and this Court's opinion in Packer found that Section 15.2 applies, and so the suspended license has to be treated as if it had been revoked for restoration purposes. Under that interpretation, Ms. McGrath, like Ms. Packer, has to reapply for her license as if she is a new applicant. The result is that, instead of the Board having discretion to reissue their suspended nursing licenses when appropriate, their licenses have been revoked for a minimum of 10 years.

But Section 15.1(b) of the Nursing Law provides for the automatic *suspension*, *not revocation*, of a license for a conviction under the Drug Act. The

17

Board could have sought revocation of Ms. McGrath's license based upon her conviction under Section 14 of the Nursing Law, 63 P.S. § 224 (providing bases for discipline, including revocation of a license, for being convicted for crimes of moral turpitude or the possession or use of controlled substances for other than medical purposes), but *it did not*. Had the Board successfully revoked her license, the *revoked* license plainly then would have been subject to the requirements of Section 15.2. Reissuance of *suspended* licenses is addressed *only* in Section 15, which provides the Board with broad discretion for reissuing such licenses. Section 15 expressly states that revocations are governed by Section 15.2, which provides either a 5-year or 10-year revocation period when read in conjunction with Section 6(c)(1). 63 P.S. §§ 216(c)(1), 225, 225.2. Packer's conclusion that Section 15 could not apply because, *inter alia*, it preceded Section 15.1(b) disregards the fact that Section 15.2 expressly refers *only to license revocations*, and does not address suspensions. Packer focused on the word "hereinafter," in Section 15.1(b), and in doing so, expanded the application of Section 15.2, a provision that applies by its terms *only* to *revoked* licenses, to also include *suspended* licenses. This addition expanded Ms. McGrath's automatic suspension into a mandatory 10-year revocation and eliminated the Board's discretionary review *expressly* permitted in Section 15, which seems contrary to the rule of statutory construction that preclude courts from adding language to statutes. Summit Sch., Inc., 108 A.3d at 199.

However, construing this language as applying Section 15, rather than Section 15.2, as the standard for reissuing licenses suspended under Section 15.1(b) also is problematic. Thus, both interpretations cause difficulty: one requiring the Court to add language to Section 15.2 (expanding its application to

18

include suspended licenses) as discussed above, the other omitting language from Section 15.1(b) (not giving effect to the word "hereinafter") as referenced in Packer. Neither interpretation completely comports with the principles of statutory construction. See 1 Pa. C.S. § 1921(a) (requiring that we attempt to give effect to all the provisions of a statute); Summit Sch., Inc., 108 A.3d at 199 (stating that courts do not "have authority to add or insert language into a statute" and should not, through interpretation, add a requirement that the General Assembly did not include). Moreover, although licenses are automatically suspended pursuant to Section 15.1(b) thereby reflecting the General Assembly recognition that Drug Act convictions are unquestionably serious matters, the General Assembly did not impose the automatic *revocation* of such licenses, which would have *expressly* limited, under the plain language of both Sections 15 and 15.2 of the Nursing Law, the Board's review of the restoration of those licenses to the terms set forth Section 15.2. Although Packer interpreted those provisions as meaning that the General Assembly "more likely" wanted to remove *all* discretion from the Board to review these *suspensions* for 10 years, Packer, 99 A.3d at 972, had the General Assembly intended to do so, it would have required the automatic *revocation* of those licenses, not suspension. Accordingly, despite applying the general rules of statutory construction, this statutory language remains ambiguous, and it is, therefore, necessary to apply the principles set forth in Section 1928(b) of the Statutory Construction Act and the rule of lenity.

Statutory provisions that impose punishment, such as the suspension or revocation of a professional license, for specified acts are considered *penal* in nature. Pa. State Real Estate Comm'n, 165 A.2d at 80. As previously described, the rule of lenity provides that the statute should provide a clear and unequivocal

19

warning in language that people generally would understand, as to what actions would expose them to liability for penalties and what the penalties would be. Additionally, ambiguities should be strictly construed against the government. The language of Section 15.2 does not comply with the rule of lenity as it does not provide "a clear and unequivocal warning . . . that people generally would understand" that the reissuance of a nursing license *suspended* under Section 15.1(b) would be governed by the more restrictive requirements of Section 15.2, which applies to *revoked* licenses, rather than by Section 15, which expressly addresses the reissuance of suspended licenses. Richards, 20 A.3d at 600 (internal quotation omitted). This is particularly troubling where the Board changed its long-standing interpretation of those provisions without providing *any* formal or informal warning, via regulation or policy guideline, of that change to the licensees over whom the Board exercises authority. Moreover, the change in interpretation was not premised on the Board's own review of the language of the Nursing Law, but on an unidentified Department or Bureau directive that, regardless of the actual language within the professional licensing statute at issue, *all* professional licensing boards that license healthcare providers were to impose a mandatory 10-year license suspension based on a felony conviction under the Drug Act.[13] Packer, 99 A.3d at 970 n.10. As these provisions are ambiguous and do not provide "a

---

[13] We note Ms. McGrath's argument that the change in interpretation requiring a 10-year suspension in *all* circumstances under Sections 15.1(b) and 15.2 was really an improperly promulgated regulation as it does not leave the Board with any discretion in these matters. See Transp. Services, Inc. v. Underground Storage Tank Indemnification Bd., 67 A.3d 142, 153-55 & n.18 (Pa. Cmwlth. 2013) (describing the difference between a statement of policy and regulation, noting that a regulation is a pronouncement that leaves an agency with no discretion to deviate therefrom and that a statement of policy allows discretion, setting forth the requirements for promulgating a valid regulation, and indicating that the failure to properly promulgate a regulation renders the regulation a nullity).

20

clear and unequivocal warning," they "should [have been] . . . construed against the government . . . [and] in favor of the [licensee]." Richards, 20 A.3d at 600 (internal quotation omitted). To hold otherwise would violate the "fundamental principle of fairness that gives validity to our laws." Sondergaard, 65 A.3d at 997. Thus, the Board shall not apply Section 15.2 to Ms. McGrath's *suspension* pursuant to Packer to mandate a minimum 10-year period for that suspension. Additionally, the Board must consider any subsequent request for reissuance of that license under the discretionary review of Section 15. There is no reason to believe that the Board, in exercising its discretion under Section 15, could not only protect the citizens of the Commonwealth, but also recognize when licensees may be rehabilitated and so able to continue working in their chosen profession without harm to the public.

Because we conclude that, even after applying the general rules of statutory construction, the language in question remains ambiguous, the Board's arguments that we do not need to apply Section 1928(b) and the rule of lenity are unpersuasive. Moreover, in several of the opinions the Board cites, the courts held that the plain language of the statute reflected the General Assembly's intent and, thus, did not apply any principles of statutory construction. Whalen, 32 A.3d at 680-84 (holding that the plain language of the statutory language associated with the ignition interlock requirements set forth in Section 3805 of the Vehicle Code, 75 Pa. C.S. § 3805, mandated such a device for an individual who accepts Accelerated Rehabilitative Disposition for Driving Under the Influence (DUI) after a prior offense because that acceptance is an acknowledgement that the individual violated Section 3802 of the Vehicle Code, 75 Pa. C.S. § 3802 (prohibiting DUI), all that is required under the plain language of Section 3805 of the Vehicle Code,

21

75 Pa. C.S. § 3805); <u>Harmar</u>, 83 A.3d at 299-300 (holding that the phrase "undue risk to public safety" found in Section 6138(c) of the Prisons and Parole Code, 61 Pa. C.S. § 6138(c), was not ambiguous and, thus, there was no need to resort to the principles of statutory construction or the rule of lenity); <u>Sondergaard</u>, 65 A.3d at 998-99 (not applying the rule of lenity because the statutory language regarding the lifetime revocation of commercial driver's license for multiple convictions of, *inter alia*, DUI as set forth in Section 1611 of the Vehicle Code, 75 Pa. C.S. § 1611, was not ambiguous). In fact, some of the cases cited by the Board contain no discussion or even mention of Section 1928(b)(1) of the Statutory Construction Act or the rule of lenity. <u>See</u> <u>Whalen</u>, 32 A.3d 677 (no reference to the rule of lenity or Section 1928(b)(1) of the Statutory Construction Act); <u>Anderson</u>, 472 A.2d at 1170-71 (applying the general rules of statutory construction to conclude that convicted parole violators forfeit all of their time at liberty on parole even if they were previously recommitted as technical parole violators and subsequently reparoled because to do otherwise would render an absurd result).[14] Accordingly, those decisions do not require a different result.

---

[14] One unreported opinion did not apply the rule of lenity because the statute in question did not define the elements necessary for the individual to be subject to punishment. <u>Selvey v. Pa. Bd. of Prob. and Parole</u> (Pa. Cmwlth., No. 2367 C.D. 2007, filed July 24, 2008), slip op. at 7 n.4 (holding that Section 21.1(a) of the Act commonly known as the Parole Act, Act of August 6, 1941, added by Section 5 of the Act of August 24, 1951, P.L. 1401, <u>as amended</u>, <u>formerly</u>, 61 P.S. § 331.21a(a), repealed by the Act of August 11, 2009, P.L. 147, (providing that a convicted parole violator forfeits all the time spent at liberty on parole) (similar language can be found at Section 6138 of the Prisons and Parole Code, 61 Pa. C.S. 6138(a)(2)) was not subject to the rule of lenity because that section did not define elements of a crime, but defines the ramifications when an individual who was on parole from a prior crime is convicted of committing a new crime).

## III.     Stare Decisis

We recognize that only two years have passed between our decision in Packer, and our current holding in this matter that Packer is overruled.  Further, we acknowledge the importance of certainty in and predictability of the law provided by the doctrine of stare decisis.  However, as our Supreme Court has explained, Chief Justice Cardozo, in his treatise The Growth of the Law, admonished that:

> We tend sometimes, in determining the growth of a principle or a precedent, to treat it as if it represented the outcome of a quest for certainty.  That is to mistake its origin.  Only in the rarest instances, if ever, was certainty either possible or expected.  The principle or the precedent was the outcome of a quest for probabilities.  Principles and precedents, thus generated, carry throughout their lives the birthmarks of their origin.  They are in truth provisional hypotheses, born in doubt and travail, expressing the adjustment which commended itself at the moment between competing possibilities.

Ayala v. Phila. Bd. of Pub. Ed., 305 A.2d 877, 886 (Pa. 1973) (quoting Benjamin N. Cardozo, The Growth of the Law 69-70 (1924) (footnote omitted)), superseded by statute on other grounds as recognized in, Dorsey v. Redman, 96 A.3d 332, 340 (Pa. 2014) (noting that after the Supreme Court abolished common law sovereign and governmental immunity, the General Assembly enacted legislation restoring that immunity).  Further, our Supreme Court has cautioned:

> While it is true that great consideration should always be accorded precedent, especially one of long standing and general acceptance, it doesn't necessarily follow that a rule merely established by precedent is infallible.  *Moreover, the courts should not perpetrate error solely for the reason that a previous decision, although erroneous, has been rendered on a given question.  This is particularly true where . . . great injustice or injury will result by following the previous erroneous decision.*  If it is wrong it should not be continued.  Judicial honesty dictates corrective action.

Olin Mathieson Chem. Corp. v. White Cross Stores, Inc., No. 6, 199 A.2d 266, 268 (Pa. 1964) (emphasis added). "The controlling principle [of] . . . the doctrine of [s]tare decisis is [that it is] not a vehicle for perpetuating error, but rather a legal concept which responds to the demands of justice." Ayala, 305 A.2d at 888. Thus, "the Court's general faithfulness to precedent is not sufficient justification to buttress judicial decisions proven wrong in principle . . . ." Tincher v. Omega Flex, Inc., 104 A.3d 328, 336 (Pa. 2014).

Our reversal of Packer is not a "[l]ight and casual treatment of the doctrine of stare decisis," which we agree should be avoided, but a question of what justice demands and reason dictates. Flagiello v. Pa. Hosp., 208 A.2d 193, 207 (Pa. 1965). The impact of Packer on the individuals affected is to preclude them from engaging in their profession for *10 years before the Board has the authority to even review their requests to reissue their suspended licenses.* It prevents the Board from exercising its discretion, as it does in all other suspensions, to determine whether the Commonwealth's citizens will be harmed by the reinstatement of a particular nurse. Such a result prevents individuals from earning their livelihood during that time period, which is particularly important because, based on the ambiguousness of Section 15.1(b) and 15.2 of the Nursing Law, licensed individuals have no guidance regarding what actions result in what punishment under the Nursing Law. We believe that our continuing reliance on Packer, therefore, creates a "great injustice or injury" to those individuals. Flagiello, 208 A.2d at 207. Having determined that Packer was wrong, "*it should not be continued[, as] [j]udicial honesty dictates corrective action.*" Olin Mathieson Chem. Corp., 199 A.2d at 268 (emphasis added).

24

## IV. Conclusion

In sum, we overrule <u>Packer</u>, and we reverse the Board's Order affirming Ms. McGrath's suspension to the extent that it holds that her suspension is for a mandatory period of not less than 10 years from the date of her conviction. We affirm the Order in all other respects. In accordance with this opinion, any reissuance request from a suspension based on Section 15.1(b) shall be reviewed under Section 15 of the Nursing Law.

_____
**RENÉE COHN JUBELIRER,** Judge

25

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Shannon McGrath, : 
               Petitioner : 
                : 
          v. :   No. 1001 C.D. 2015
                : 
Bureau of Professional and : 
Occupational Affairs, State Board of : 
Nursing, : 
             Respondent : 

## O R D E R

**NOW**, August 24, 2016, the Order of the Bureau of Professional and Occupational Affairs, State Board of Nursing (Board), entered in the above-captioned matter, is **AFFIRMED IN PART** and **REVERSED IN PART**. The Order is **AFFIRMED** to the extent that it imposes an automatic suspension of Shannon McGrath's professional nursing license, but **REVERSED** to the extent that it applies Section 15.2 of The Professional Nursing Law[15] (Nursing Law), 63 P.S. § 225.2, to that automatic suspension. In accordance with the foregoing opinion, any reissuance request from a suspension based on Section 15.1(b) of the Nursing Law, 63 P.S. § 225.1(b), shall be reviewed under Section 15 of the Nursing Law, 63 P.S. § 225.

                        _____

                        **RENÉE COHN JUBELIRER,** Judge

---

[15] Act of May 22, 1951, P.L. 317, <u>as amended</u>, added by Section 13 of the Act of December 20, 1985, P.L. 409, 63 P.S. § 225.2.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Shannon McGrath,                          :
                              Petitioner   :
                                          :
            v.                            :   No. 1001 C.D. 2015
                                          :   Submitted:  May 11, 2016
Bureau of Professional and                :
Occupational Affairs, State Board of      :
Nursing,                                  :
                              Respondent   :


BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
          HONORABLE RENÉE COHN JUBELIRER, Judge
          HONORABLE ROBERT SIMPSON, Judge
          HONORABLE P. KEVIN BROBSON, Judge
          HONORABLE PATRICIA A. McCULLOUGH, Judge
          HONORABLE ANNE E. COVEY, Judge
          HONORABLE MICHAEL H. WOJCIK, Judge


**DISSENTING OPINION**
**BY JUDGE BROBSON**                       **FILED:  August 24, 2016**


In this appeal, the Court is confronting the very same competing constructions of Sections 15.1(b) and 15.2 of The Professional Nursing Law (Nursing Law)[1] that the Court confronted in *Packer v. Bureau of Professional and Occupational Affairs, Department of State, State Board of Nursing*, 99 A.3d 965 (Pa. Cmwlth. 2014).  It was a close case two years ago, and it is a close case today. Faced with an ambiguous statute, this Court chose one of two paths in *Packer*. Now, two years later, the Court has chosen the other.

---

[1] Act of May 22, 1951, P.L. 317, added by the Act of December 20, 1985, P.L. 409, *as amended*, 63 P.S. §§ 225.1(b), 225.2.

I agree with the majority that the doctrine of *stare decisis* is not so rigid a rule that it requires this Court to sacrifice justice on the altar of consistency. Nonetheless, the majority's justification for abandoning *Packer* is the impact *Packer*, if it remains law, has on nurses who find themselves in similar circumstances to Angela Maria Packer and Shannon McGrath. This Court was well aware of what our decision in *Packer* would mean to these individuals in terms of restoration of their licenses following a conviction for violating The Controlled Substance, Drug, Device and Cosmetic Act.[2] Nonetheless, "[o]ur function is to decide cases as they come before us on the pertinent facts and law." *Flagiello v. Pa. Hosp.*, 208 A.2d 193, 202 (Pa. 1965). That is what we did in *Packer.* Notwithstanding any perceived harshness flowing from our decision in *Packer*, the decision was not so *clearly* erroneous to justify unsettling an area of law that this Court settled only two years ago. *See Lewis v. Workers' Comp. Appeal Bd. (Giles & Ransome, Inc.)*, 919 A.2d 922, 928 (Pa. 2007) ("Although this Court adheres to the principle of *stare decisis*, it will not be bound by a decision that in itself is *clearly contrary* to the body of the law." (emphasis added)).

I, therefore, respectfully dissent.

_____
P. KEVIN BROBSON, Judge

Judge Simpson joins in this dissenting opinion.

---

[2] Act of April 14, 1972, P.L. 233, *as amended*, 35 P.S. §§ 780-101 to -144.

PKB-2