IN THE SUPREME COURT OF PENNSYLVANIA
WESTERN DISTRICT

**SAYLOR, C.J., BAER, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**

| | | |
|---|---|---|
| SHANNON MCGRATH, | : | No. 5 WAP 2017 |
| | : | |
| Appellee | : | Appeal from the Order of the |
| | : | Commonwealth Court entered 8/24/16 |
| v. | : | at No. 1001 CD 2015, affirming in part |
| | : | and reversing in part the order of the |
| | : | Bureau of Professional and |
| BUREAU OF PROFESSIONAL AND | : | Occupational Affairs entered 4/10/15 at |
| OCCUPATIONAL AFFAIRS, STATE | : | No. 1393-51-13 |
| BOARD OF NURSING, | : | |
| | : | |
| Appellant | : | SUBMITTED: May 2, 2017 |

*OPINION*

**CHIEF JUSTICE SAYLOR**                                    **DECIDED: November 22, 2017**

This appeal by allowance involves the automatic suspension of a nursing license based on a felony drug conviction. The question raised is whether, under the governing statute, reinstatement of the license is precluded for a fixed period of ten years, or is instead permitted at an earlier date subject to the discretion of the state nursing board.

The nursing profession in Pennsylvania is overseen by the State Board of Nursing (the "Board"), an arm of the Bureau of Professional and Occupational Affairs (the "Bureau"), which in turn is part of Pennsylvania's Department of State. Nursing licenses are regulated pursuant to the Professional Nursing Law.[1] Once issued, nursing

---

[1] Act of May 22, 1951, P.L. 317, No. 69 (as amended 63 P.S. §§211-225.5) (the "Nursing Law," or simply the "Law").

licenses may be suspended or revoked by the Board. As set forth in Section 14 of the Law, the Board may suspend or revoke a license if it makes certain findings. *See* 63 P.S. §224(a), (b)(3). Additionally, the Board may refuse to issue an initial license for these same reasons. For example, the Board may refuse, suspend, or revoke a license if it finds that the licensee – or prospective licensee, as the case may be – is repeatedly negligent or incompetent in practice; suffers from a mental or physical illness which renders the person unable to practice with reasonable skill and safety; has willfully and repeatedly violated the Nursing Law; has committed certain types of fraud or deceit; has committed unprofessional conduct; has possessed or distributed a controlled substance for other than medical purposes; has been convicted of a felony or a crime of moral turpitude; or has received probation without verdict in the disposition of a felony charge. *See id.* §224(a).

After the Board has suspended a license, it may restore or reissue the license in its discretion subject to any disciplinary or corrective measure it could have originally imposed. *See id.* §224(b)(6). The process for doing so is reflected in Section 15 of the Nursing Law, which states, in pertinent part:

> All suspensions and revocations shall be made only in accordance with the regulations of the Board, and only by majority vote of the members of the Board after a full and fair hearing before the Board. . . . The Board, by majority action and in accordance with its regulations, may reissue any license which has been suspended. If a license has been revoked, the Board can reissue a license only in accordance with section 15.2.

63 P.S. §225. Thus, the Law sets forth distinct procedures for the restoration of suspended and revoked licenses, and it imposes a more restrictive regimen in relation to the latter.

In addition to the discretionary suspension of licenses under Sections 14 and 15, the Nursing Law contains a provision, added in 1985, for automatic suspension due to a

felony conviction under the Controlled Substance, Drug, Device and Cosmetic Act.[2]  In particular, Section 15.1(b) of the Law states:

> A license issued under this act shall automatically be suspended upon . . . conviction of a felony under the [Controlled Substance Act] . . ..  As used in this section the term "conviction" shall include a judgment, an admission of guilt or a plea of nolo contendere.  . . .  *Restoration of such license shall be made as hereinafter provided in the case of revocation or suspension of such license.*

63 P.S. §225.1(b) (emphasis added).  In terms of the "hereinafter provided" clause of the above text, Section 15.2 indicates:

> Unless ordered to do so by Commonwealth Court or an appeal therefrom, the Board shall not reinstate the license of a person to practice nursing . . . which has been revoked.  Any person whose license has been revoked may reapply for a license, after a period of at least five (5) years, but must meet all of the licensing qualifications of this act for the license applied for, to include the examination requirement, if he or she desires to practice at any time after such revocation.

63 P.S. §225.2.

Finally, Section 6(c) of the Nursing Law, which relates to the qualifications for licensure, specifies that if a nursing license applicant has been convicted of a felony under the Controlled Substance Act, the Board may not issue a nursing license to that person unless:  ten years have passed since the date of the conviction; the applicant demonstrates significant progress in rehabilitation so that licensure is not expected to create a substantial risk to patients or the public; and the applicant otherwise satisfies the licensure qualifications set forth in the Law.  *See* 63 P.S. §216(c).[3]

---

[2] Act of April 14, 1972, P.L. 233, No. 64 (as amended 35 P.S. §§780-101 to 780-144) (the "Controlled Substance Act").

[3] Like Section 15.1(b), Section 6(c) clarifies that a conviction includes having admitted guilt.  *See* 63 P.S. §216(c)(3).

Given the interplay among the above provisions – and the fact that Section 15.2 only facially applies to revoked, as opposed to suspended, licenses – there is some uncertainty as to when and how a license which has been automatically suspended per Section 15.1(b) may be restored. At the heart of this appeal is the proper interpretation of Section 15.1(b)'s prescription that restoration "shall be made as hereinafter provided in the case of revocation or suspension of such license." 63 P.S. §225.1(b).

Turning to the facts of this case, at the relevant time Appellee held a license to practice professional nursing in Pennsylvania. In 2013, she pled guilty to one count of felony drug possession in violation of the Controlled Substance Act and received a sentence of probation without verdict. The Commonwealth then petitioned the Board to impose an automatic suspension of Appellee's nursing license pursuant to Section 15.1(b) of the Nursing Law. In response, the Board issued a notice and order informing Appellee that her nursing license would be automatically suspended based on her felony guilty plea. As for the length of the suspension, the Board referenced two aspects of the Nursing Law reflecting different time periods. It first observed that Section 15.2 of the law prescribes a five-year minimum period. *See* 63 P.S. §225.2. Next, the Board referred to Section 6(c) of the Nursing Law, which provides for a ten-year period with regard to the issuance of a new license. *See* 63 P.S. §216(c). After quoting these provisions, the Board, without explanation, indicated that Appellee's license would be automatically suspended for ten years.

Appellee filed exceptions arguing that the ten-year suspension period was improper.[4] Thereafter, the Board entered a final adjudication affirming the notice and order. Applying an interpretation of Sections 15.1(b) and 15.2 which it had recently adopted, *see infra* note 5, the Board explained that, under the latter provision,

---

[4] Appellee has acted *pro se* throughout this litigation.

Appellee's license may only be restored "pursuant to the requirements for suspensions and revocations." *In re Automatic Suspension of the License to Practice Prof'l Nursing of Shannon McGrath*, No. 1393-51-13, Final Adjudication & Order, *slip op.* at 5 (Bureau of Prof'l & Occupational Affairs Apr. 10, 2015). The Board expressed that, because a person whose license has been revoked must, under Section 15.2, meet all initial licensure requirements at the time of restoration – including the requirements of Section 6(c) – Appellee could only be "relicensed" after a ten-year period. *Id.* Thus, the Board viewed restoration of an automatically-suspended license as being subject to the same prerequisites as those stated in Section 15.2 for revoked licenses.

In terms of precedent, the Board acknowledged it had traditionally proceeded under Section 15 and exercised discretion in deciding when to restore an automatically-suspended license. It noted, though, that its new understanding of the statutory scheme as mandating a ten-year suspension period had recently been endorsed by the Commonwealth Court in *Packer v. Bureau of Professional & Occupational Affairs, State Board of Nursing*, 99 A.3d 965 (Pa. Cmwlth. 2014), *appeal denied*, 631 Pa. 715, 109 A.3d 680 (2015) (table), *overruled by McGrath v. Bureau of Professional & Occupational Affairs, State Board of Nursing*, 146 A.3d 310 (Pa. Cmwlth. 2016) (*en banc*) – another case involving an automatic nursing-license suspension based on a felony conviction under the Controlled Substance Act.[5] The Board thus rejected Appellee's suggestion that it should adhere to its pre-2013 practice by applying Section 15 in this case. *See In*

---

[5] In its brief in the *Packer* matter, the Board explained that it began implementing this new understanding in 2013 in response to a directive from the Bureau. *See Packer*, 99 A.3d at 970 & n.10. However, neither the Bureau nor the Board issued a formal or informal interpretation – nor did they promulgate rules or regulations or generate policy guidelines – reflecting this reading of the Law. *See generally id.* at 969-71.

*re Automatic Suspension of the License to Practice Prof'l Nursing of Shannon McGrath*, No. 1393-51-13, Final Adjudication & Order, *slip op.* at 5-6.[6]

A divided *en banc* panel of the Commonwealth Court reversed the Board's holding that Appellee was precluded from seeking reinstatement of her license for ten years. *See McGrath*, 146 A.3d at 312. The majority initially acknowledged that, after finding the statute ambiguous, *Packer* ultimately agreed with the Board's new interpretation. More particularly, the majority noted that *Packer* had: (a) read Section 15.1(b)'s "hereinafter" qualifier to reflect that the Legislature did not intend for the restoration of automatically-suspended licenses to be subject to the Board's discretion under Section 15; and (b) deemed "inconsequential" Section 15.2's exclusive reference to revoked licenses rather than suspended licenses. *See id.* at 317 (citing and quoting *Packer*, 99 A.3d at 972-73). Nevertheless, the majority stated that the provisions are penal in nature, *see id.* at 316 (citing *Pa. State Real Estate Comm'n v. Keller*, 401 Pa. 454, 456, 165 A.2d 79, 80 (1960) (indicating that a license-suspension provision of a statute regulating real estate brokers' licenses should be construed against the government due to its punitive nature)) – a circumstance *Packer* had failed to consider. The majority thus questioned whether application of the rule of lenity might lead to a different result. In view of *Packer*'s omission in this respect, the majority – again recognizing the ambiguous character of the Nursing Law – undertook a *de novo* construction of the statutory provisions presently in issue.

In its analysis, the majority portrayed the Board's pre-2013 interpretation – that it retained discretion under Section 15 to reinstate nursing licenses which had been

---

[6] It bears noting that, as Appellee's license was automatically suspended under Section 15.1(b), it was *not* suspended pursuant to the Board's discretion predicated on any of the factors listed in Section 14, notwithstanding that, as recited above, one such factor pertains to the improper possession of a controlled substance.

automatically suspended under Section 15.1(b) – as a natural and simple way to read the statute. The majority observed that: Section 15 distinguishes between suspended and revoked licenses and, by its terms, it governs the reissuance of all suspended licenses; Section 15.1(b) expressly contemplates "restoration" of a suspended license, suggesting that the licensing procedures for new applicants are inapplicable; and Section 15.2, facially, only pertains to revoked licenses. *See id.* at 319-20. Still, the majority acknowledged that uncertainty remained because:

> Section 15.1(b) also states that "[r]estoration of such license shall be made as hereinafter provided in the case of revocation or suspension of such license." The phrases "as hereinafter provided" and "revocation or suspension" create an ambiguity because the section after 15.1 is 15.2, which applies to revocations but does not even mention suspensions.

*Id.* at 320 (quoting 63 P.S. §225.1(b); citation and emphasis omitted).

The majority thus concluded that neither the Board's, nor Appellee's, reading fully comports with interpretive precepts because the former would require the court to add language to Section 15.2 to expand its application to encompass suspended licenses, whereas the latter would require the court to ignore the word "hereinafter." Facing this quandary, the majority reiterated that the provisions in issue are punitive inasmuch as they authorize the suspension of a professional license, and as such, they should be strictly construed against the government. *See* 1 Pa.C.S. §1928(b)(1). The majority additionally expressed that one aspect of the rule of lenity is that a punitive statute must provide a clear and unequivocal warning concerning the penalties a person's actions will trigger. By not mentioning suspensions, the majority continued, Section 15.2 failed to satisfy that requirement – meaning that it should be construed as not covering suspended licenses. *See McGrath*, 146 A.3d at 321-22. Accordingly, the majority overruled *Packer* and held that the proper framework for reinstating a license that has been suspended pursuant to Section 15.1(b) is encompassed in Section 15 of the Law.

It therefore reversed the Board's adjudication insofar as it precluded Appellee from seeking reinstatement of her license for ten years. *See id.* at 324.

Judge Brobson filed a brief dissent, joined by Judge Simpson, expressing that, although *Packer* was a close case, the panel's decision "was not so clearly erroneous to justify unsettling an area of law that this Court settled only two years ago." *Id.* at 325 (Brobson, J., dissenting) (emphasis omitted).

We granted further review to consider whether the majority's holding reflects the proper interpretation of the Nursing Law. *See McGrath v. Bureau of Prof'l & Occupational Affairs, State Bd. of Nursing*, ___ Pa. ___, 166 A.3d 1216 (2017) (*per curiam*). As the issue implicates the interpretation of a statute, it raises a question of law over which our review is plenary and *de novo. See Fish v. Twp. of Lower Merion*, 633 Pa. 705, 713, 128 A.3d 764, 769 (2015).[7]

The statutory language lacks substantial clarity for the reasons articulated by the Commonwealth Court majority in the present matter. Unsurprisingly, the parties differ over how to resolve any uncertainty. The Board largely argues that *Packer*'s resolution reflects legislative intent, while Appellee approves of the *en banc* panel's analysis. In view of the absence of an explicit directive for restoration of an automatically-suspended

---

[7] In its petition for allowance of appeal the Board also questioned whether the intermediate court erred in overruling *Packer* rather than applying the doctrine of *stare decisis.*

Although *stare decisis* applies as a general policy in Pennsylvania courts, the Commonwealth Court's procedures contemplate departure in some instances, *see* Commonwealth Court Internal Operating Procedures §257 – and, moreover, an *en banc* panel of an intermediate court is authorized to overrule a three-judge panel decision of the same court. *See generally Commonwealth v. Morris*, 958 A.2d 569, 580 n.2 (Pa. Super. 2008). Furthermore, where, as here, this Court undertakes *de novo* resolution of a legal issue, any assessment concerning the propriety of the intermediate court's failure to follow its own precedent on that issue is immaterial.

license which has not been revoked, resort to the precepts of statutory-construction is presently warranted.  *See generally* 1 Pa.C.S. §1921.[8]

In applying such principles, we may discern the enactment's meaning by looking to several factors, including the former law on the topic and "other statutes upon the same or similar subjects."  *Id.* §1921(c)(5).  In this respect, Appellee draws our attention to the pre-1985 version of the Nursing Law and the textual modifications made to the Nursing Law by the 1985 legislation.  *See* Brief for Appellee at 4.  We agree that such revisions, together with similar automatic-suspension provisions in other professional-licensing statutes, shed light on the legislative intent underlying the statutory provisions under review – the effectuation of which is our primary objective.  *See* 1 Pa.C.S. §1921(a); *Tritt v. Cortes*, 578 Pa. 317, 321, 851 A.2d 903, 905 (2004).

The Nursing Law has existed since 1951, *see supra* note 1, but until May 1985 it lacked any requirement that a license be automatically suspended upon conviction of a Controlled Substance Act felony.  In May 1985, the Legislature revised the statute by adding Section 16.1 (repealed and replaced later that year) which was nearly identical to the present Section 15.1(b), quoted above.  Section 16.1 stated:

> A license issued under this act shall automatically be suspended upon . . . conviction of a felony under the [Controlled Substance Act] . . ..  As used in this section the term "conviction" shall include a judgment, an admission of guilt or a plea of nolo contendere.  . . .  *Restoration of such license shall be made as in the case of revocation or suspension of such license.*

---

[8] Usage of such precepts is proper when statutory language is "not explicit."  1 Pa.C.S. §1921(c).  Although this Court has often described such a circumstance as suggesting the existence of two reasonable interpretations, *see, e.g.*, *O'Rourke v. Dep't of Corr.*, 566 Pa. 161, 172-73, 778 A.2d 1194, 1201 (2001), the "not explicit" prerequisite logically applies where, as here, *any* reading of the statute's plain text raises non-trivial interpretive difficulties.

Act of May 2, 1985, P.L. 22, No. 10, §2, set forth at 63 P.S. §226 (emphasis added) (repealed and replaced by Act of Dec. 20, 1985, P.L. 409, No. 109, §§13, 14 (as amended 63 P.S. §15.1(b))).

The emphasized part of the above text contains two noteworthy features. First, it lacks the phrase "hereinafter provided," after the word "as," which is the only difference between it and the last sentence of the present Section 15.1(b). The implications of this aspect of the text are discussed below in connection with the wording changes made by the General Assembly seven months later, in December 1985, in conjunction with its decision to move Section 16.1 to the newly-created Section 15.1(b).

Second, Section 16.1 provides that "[r]estoration of such license," is to be made "as in the case of revocation or suspension of such license." In other words, it states that a license subject to *automatic* suspension should be restored as in the case of a license subject to suspension or revocation.[9] Because licenses subject to automatic suspension under Section 16.1 would appear to be a subset of *all* licenses subject to suspension, this phraseology at first appears tautological: it seems to imply that restoration of an automatically-suspended license (which has not been revoked) is to be made as in the case of an automatically-suspended license. We assume, though, that this is not what the Legislature intended to convey. *See generally* 1 Pa.C.S. §1922(2) (requiring a presumption that the General Assembly intends the entire statute to be effective). The solution is to recognize that, per the Legislature's usage, an "automatic suspension" under then-Section 16.1 (now-Section 15.1(b)) is a separate category from a "suspension" – as confirmed by the phrase, "as in the case of."

---

[9] The reference to revocation appears to have been included to account for the possibility that an automatically-suspended license might later be revoked during the time it is suspended.

It follows that the statutory text, "as in the case of . . . suspension of such license" refers to an ordinary – or non-automatic – suspension of a license, *i.e.*, a license suspended pursuant to Sections 14 and 15. Consistent with this understanding, Section 15, by its terms, relates to "[a]ll suspensions," as it states that "[a]ll suspensions . . . shall be made only in accordance with the regulations of the Board, and only by majority vote of the members of the Board." 63 P.S. §225. This, again, confirms that the Legislature viewed suspensions and automatic suspensions as comprising distinct, non-overlapping categories, with suspended licenses to be restored per the Board's regulations as set forth in Section 15, the final sentence of which, at the time, indicated: "The Board, by majority action and in accordance with its regulations, may reissue any license which has been suspended or revoked." 63 P.S. §225 (as of May 1985).[10]

In summary, then, with the enactment of the former Section 16.1 in May 1985, the Legislature: (a) prescribed that a license should be automatically suspended based

---

[10] A review of other professional-licensing enactments reveals that this represents common legislative shorthand. To take but one example, the Optometric Practice and Licensure Act, *see* 63 P.S. §§244.1-244.12, includes a provision nearly identical to Section 16.1, the last sentence of which states: "Restoration of such license shall be made as provided in this act for revocation or suspension of such license." *Id.* §244.7(g). As in the Nursing Law, although this language is contained in the automatic-suspension context, it uses the term "suspension" to refer to the general provisions for license suspension and their discretionary restoration. *See id.* §244.7(b)(6).

The same phraseology appears in the licensing statutes pertaining to numerous other professions. *See, e.g.*, *id.* §§42.16a(b) (podiatrists); 157.1(b) (engineers, land surveyors, and geologists); 271.14(b) (osteopaths); 390-7(d.2) (pharmacists); 422.40(b) (medical doctors); 485.25(c) (veterinarians); 625.506(e) (chiropractors); 667.1(b) (practical nurses); 1108.1(b) (nursing home administrators); 1208(e) (psychologists); 1311.1 (physical therapists); 1911(e) (social workers). It also appears in the Controlled Substance Act itself. *See* 35 P.S. §780-123(c) (specifying that where a professional license has been subject to an *automatic* suspension based on a misdemeanor conviction under the Controlled Substance Act, "[r]estoration of such license shall be made as in the case of a suspension of license").

on, *inter alia*, a felony conviction under the Controlled Substance Act; (b) stated that the restoration of a license thus suspended should be accomplished "as in the case of" a suspended license, pursuant to the non-automatic guidelines for suspension; and (c) expressed its intention in this regard by using the phrase "suspension of such license" to refer to the non-automatic suspension scenario.

With this background, we proceed to examine the revisions to the Nursing Law accomplished by the legislation which led to the text of Section 15.1(b) as it appears today. Passed in December 1985 – approximately seven months after Act 10 added Section 16.1 – Act 109 of 1985, *see* Act of Dec. 20, 1985, P.L. 409, No. 109 ("Act 109"), made a number of substantive additions to the Nursing Law. Several of these pertain to the present controversy. Of particular relevance, Act 109 changed the last sentence of Section 15 as follows:

> The Board, by majority action and in accordance with its regulations, may reissue any license which has been suspended **[or revoked]**. ***If a license has been revoked, the Board can reissue a license only in accordance with section 15.2**.*

Act 109, §12.[11]

At the same time, Act 109 added Section 15.2 which, as discussed, facially relates only to revoked licenses. Further – and importantly for present purposes – in moving Section 16.1 to the new Section 15.1(b), Act 109 changed the last sentence in a manner reflected by the following italicization:

> Restoration of such license shall be made as ***hereinafter provided*** in the case of revocation or suspension of such license.

Act 109, §13; *see* 63 P.S. §225.1(b).

---

[11] In keeping with legislative custom, changes are bolded, with bracketed text showing deleted language and italicized text showing added words. Thus, the above reflects the manner in which the text appears Act 109 itself, *i.e.*, in the pamphlet law.

The above revision to Section 15 directs the reader to Section 15.2 for details on the reissuance of a revoked license while leaving in place the mechanism for restoration of a suspended license.[12] Consistent with that revision, the change to the automatic-suspension provision – the insertion of the words "hereinafter provided" as illustrated in the above-quoted text – also refers the reader to some later section of the Law for details on how restoration of a license is to be made "in the case of revocation[.]"

Critical for purposes of this appeal is the proper understanding of the two words that follow – "or suspension." If they are understood as being semantically connected to the hereinafter clause, significant difficulties arise because, as discussed, Section 15.2 only relates to revoked licenses, not to licenses that have only been suspended. Such difficulties are avoided by recognizing that the addition of the phrase, "hereinafter provided," could not have altered the existing meaning of the word "suspension" as it appears later in the same sentence. As detailed above, that word does not refer to an automatic suspension of a license under Section 15.1(b) itself, but rather, to a discretionary suspension accomplished per Sections 14 and 15. Recognizing this also makes the textual revision (insertion of the hereinafter clause) consistent with the simultaneous revision to Section 15, which keeps in place the mechanism for restoration of a *suspended* license, but specifies that restoration of a *revoked* license is now governed by a provision appearing later in the statute, *i.e.*, Section 15.2.[13]

---

[12] As regards the legislative terminology relating to the recovery of licensure, Section 15 relates to the "reissuance" of suspended or revoked licenses, Section 15.1(b) speaks in terms of "restoration" of such licenses, and Section 15.2 couches such action as "reinstatement" of revoked licenses. It is apparent that, in these provisions, such terms are used interchangeably. *Accord Packer*, 99 A.3d at 974 n.20.

[13] It may also be noted that Section 15.1(a), which relates to temporary suspensions due to a clear danger to public health and safety, specifies that Section 15's procedure for reinstatement of a suspended license does not apply to temporarily suspended (continued…)

Accordingly, we conclude that the phrase "hereinafter provided" was only intended by the General Assembly to apply to the revocation scenario.[14]

The Board takes exception to such an outcome primarily based on policy concerns. *See* Brief for Appellant at 16-18. It suggests, for example, that an absurd result may arise because discretionary restoration of a license suspended pursuant to Section 15.1(b) could theoretically occur shortly after a felony conviction, whereas a suspension based on a misdemeanor conviction could last as long as one year. *See* 35 P.S. §780-123(c) (providing that licensing boards "shall automatically suspend, for a period not to exceed one year, the registration or license of any practitioner" when the person has been convicted of a misdemeanor under the Controlled Substance Act). Also, the Board asserts that it would be inequitable if individuals who are licensed as professional nurses, but whose licenses are automatically suspended due to a felony conviction under the Controlled Substances Act, could be restored to practice after less than ten years, whereas a person who has never been licensed would have to wait ten years after a felony conviction to become licensed.

These arguments are not well taken. First, under our interpretation the Board retains discretion to reinstate an automatically-suspended license based on numerous factors, and there is no suggestion that the Board would ever be required to impose an unduly short suspension period in the wake of a felony conviction. The comparison to a

_____

(…continued)
licenses. *See* 63 P.S. §225.1(a). No similar expression of non-applicability is found in Section 15.1(b).

[14] Certainly, a rule-of-lenity overlay as suggested by Justice Wecht yields the same result as our analysis. Still, we think it important to consider other traditional tools of statutory construction in an effort to ascertain legislative intent and rationally assign meaning to legislative words which, initially, seem unclear. Moreover, we believe that doing so is appropriate even where the exercise entails some complexity.

misdemeanant's period of suspension is particularly inapt because in that case, too, the law specifies that the length of suspension is "not to exceed one year," 35 P.S. §780-123(c) – meaning, again, that the length of the suspension ultimately falls within the Board's discretion.

Second, the Board fails to acknowledge that a professional nurse who has been licensed but whose license has been suspended is not similarly situated to an individual who has never been licensed – or, for that, matter, a person who was once licensed but whose license has been revoked. *See generally Brown v. State Bd. of Pharmacy*, 129 Pa. Cmwlth. 642, 646, 566 A.2d 913, 915 (1989) (acknowledging that a person holding a professional license still possesses a property right in that license even where it has been suspended (but not revoked), as a suspended license is "susceptible to revival"); *Pittenger v. Bureau of Prof'l & Occupational Affairs*, 142 Pa. Cmwlth. 57, 61-62, 596 A.2d 1227, 1229-30 (1991) (same, and expressing further that "when a license . . . is revoked, it is extinguished and the former possessor is returned to the same position he occupied had the license or privilege never been issued" (quoting *Keeley v. State Real Estate Comm'n*, 93 Pa. Cmwlth. 291, 296, 501 A.2d 1155, 1158 (1985))).

Even putting aside this difference in constitutional footing, it is not illogical that the General Assembly would provide for discretionary reinstatement of an automatically-suspended license while also requiring a ten-year waiting period for a convicted felon who has never held a license. In the former case the Board has a record of interaction in which the licensee previously demonstrated the requisite skills, knowledge, and moral character to become a licensed professional, and has additionally fulfilled any continuing requirements for licensure over a period of time. *See* 63 P.S. §§215 (relating to examinations and certificates); 216 (relating to fees and qualifications for licensure); 222 (relating to continuing nursing education). This history, being available to the

agency, can assist it in making an informed, discretionary determination as to whether and when a suspended license should be reinstated. The same information is not available in relation to a person who has never attained licensure.

We recognize that Section 15.1(b) reflects a clear legislative policy judgment that a felony violation of the Controlled Substances Act is an especially serious infraction warranting an automatic license suspension. It does not follow, however, that the legislative body also intended to divest the Board of its discretion to restore such a license in the manner applicable to other license suspensions after conducting an appropriate administrative review.

Finally, nothing in our decision prevents the Board from seeking revocation of a license, in accordance with the procedures outlined in the Nursing Law, following a conviction under the Controlled Substances Act. *See* 63 P.S. §224(a)(8) (authorizing the Board to impose discipline, up to and including revocation, based on the acquisition, possession, distribution, or use of a controlled substance for other than acceptable medical purposes); *accord McGrath*, 146 A.3d at 320 ("The Board could have sought revocation of Ms. McGrath's license [under Section 14] . . . but it did not." (emphasis omitted)). If an automatically-suspended license is ultimately revoked, reinstatement would then be governed by Section 15.2.

The order of the Commonwealth Court is affirmed.


Justices Baer, Todd, Donohue, Dougherty and Mundy join the opinion.

Justice Wecht files a concurring opinion.