IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Commonwealth of Pennsylvania | : | |
| | : | |
| v. | : | No. 415 C.D. 2021 |
| | : | Argued: September 11, 2023 |
| Richard A. Prentiss, | : | |
| Appellant | : | |

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, President Judge
                     HONORABLE MICHAEL H. WOJCIK, Judge
                     HONORABLE MARY HANNAH LEAVITT, Senior Judge

OPINION
BY SENIOR JUDGE LEAVITT                              FILED: May 3, 2024

Richard A. Prentiss appeals two orders of the Court of Common Pleas of Clearfield County (trial court) convicting him of summary offenses under the Game and Wildlife Code (Game Code).[1] The first order convicted Prentiss of "shooting on or across highways" in violation of Section 2504(a) of the Game Code, 34 Pa C.S. §2504(a), and sentenced him to pay a fine of $150 "for the benefit of Clearfield County" plus costs of prosecution. Trial Court Order, 12/7/2020. The second order convicted Prentiss of "unlawful taking or possession of game or wildlife" in violation of Section 2307(a) of the Game Code, 34 Pa. C.S. §2307(a), and sentenced him to pay a fine of $1,500 "for the benefit of Clearfield County" plus costs of prosecution and "replacement costs" of $1,666.68 to the Commonwealth. Trial Court Order, 12/7/2020. We affirm the trial court's conviction for the violation of Section 2504(a) of the Game Code and reverse the conviction for the violation of Section 2307(a). Accordingly, we remand to the trial court to determine an appropriate sentence.

---

[1] 34 Pa. C.S. §§101-2965.

## Background

The Keystone Elk County Alliance is a non-profit organization that preserves elk in Clearfield and Elk Counties. To raise funds, the Alliance conducts an annual raffle, with the approval of the Pennsylvania Game Commission, for the issuance of an early hunting license authorizing the kill of a single elk. In 2019, Prentiss won the raffle, which also entitled him to professional guide services. Kim Rensel and Gary Couteret, who are affiliated with Elk County Outfitters, volunteered to provide these services to Prentiss for a period of seven days, beginning on September 11, 2019.

On the third day of hunting, September 13, 2019, Rensel "was guiding Prentiss at different hunting locations." Trial Court Op. at 1. Ben Gnan accompanied them to film the hunt for potential use in a documentary. After leaving their first planned location for hunting, Rensel drove Prentiss and Gnan to the second planned location. As they were driving, "Rensel and Prentiss crossed paths with Couteret," who was traveling in a separate vehicle. *Id.* Couteret stopped his vehicle on the road and told Rensel and Prentiss (who were still in the vehicle) that "there were elk in the field around the corner." *Id.* Couteret drove away, and Rensel parked his vehicle on the side of the road. He and Prentiss walked across the road onto a field. As they did, a herd of elk moved into that field from the woods, followed by a large bull elk. At a point approximately 10 feet from the edge of the road, Prentiss took several shots at the bull elk in the distance. The party later determined that the shots had succeeded in killing the elk.

On March 10, 2020, Prentiss, Rensel, and Couteret were each separately cited by the Game Commission for their actions on September 13, 2019. Prentiss was cited for shooting on or across a highway in violation of Section 2504(a)

2

of the Game Code and for violating Section 2307(a) of the Game Code by aiding, abetting, concealing, or taking wildlife contrary to a provision of the Game Code, which provision was not named. After a hearing before the magisterial district judge, Prentiss was found guilty.

Prentiss appealed, and the trial court conducted a *de novo* trial on September 28, 2020. At the outset of the trial, Prentiss' counsel moved to dismiss Prentiss' charge for violating Section 2307(a) of the Game Code for the stated reason that the citation lacked the specificity required by the Pennsylvania Rules of Criminal Procedure. *See* PA.R.CRIM.P. 403(A)(6).[2] The trial court did not rule on the motion but stated that it would "take the defense objection under advisement." Notes of Testimony, 9/28/2020, at 6 (N.T. __); Reproduced Record at 9 (R.R. __).

The Commonwealth presented the testimony of Gnan, the cameraman. He testified that the plan for September 13, 2019, was for the party to "drive to a specific location, get out and hunt at that location[.]" N.T. 14; R.R. 11. They went first to a place called "Hoover plot" and because they did not "see anything there[,]" they decided to move to the Kolovoski property, where "[they] had been the prior two days[.]" N.T. 14; R.R. 11. Prentiss killed the bull elk on the Hoffman property, which is "[a]cross the road" from the Kolovoski property. N.T. 17; R.R. 12. Gnan filmed the conversation between the trucks of Couteret and Rensel while in the road and the shooting of the bull elk, and the Commonwealth played Gnan's video at the trial. Gnan testified that the group's conduct that day did not constitute road hunting.

The Commonwealth also presented testimony of Mark Gritzer, a game warden for the Game Commission, who offered his interpretation of Gnan's video.

---

[2] It states that, "[e]very citation shall contain: . . . (6) a citation of the specific section and subsection of the statute or ordinance allegedly violated, together with a summary of the facts sufficient to advise the defendant of the nature of the offense charged[.]" PA.R.CRIM.P. 403(A)(6).

He noted that Couteret told Rensel and Prentiss, while they were in their separate vehicles, that there was a bull elk "in the woods" located "around the corner." N.T. 24; R.R. 13. According to Gritzer, Rensel and Prentiss responded by parking the vehicle to "get out to pursue that animal." N.T. 24; R.R. 13. Gritzer estimated the distance from Rensel's vehicle to the intersection of Oak Hill Road and Hoffman Road to be 52 yards. Gritzer noted, further, that as they crossed the road, Rensel told Prentiss that "he cannot shoot across the road." N.T. 27-28; R.R. 14. Gritzer estimated that Prentiss took his first shot at the elk at approximately 10 feet from the road's edge "based on the location of the stop sign in the video footage." N.T. 28; R.R. 14. Gritzer believed that from the time of Prentiss' exit from the vehicle to his first shot at the elk, two minutes had passed.

On cross-examination, Gritzer acknowledged that the area where the shooting took place was known as a traditional breeding ground that "attracts a lot of big bulls coming to that area to participate in the breeding situation." N.T. 32; R.R. 15. Gritzer also acknowledged that he arrived at the scene within minutes after the elk was killed and did not see "anything wrong." N.T. 31; R.R. 15. He initiated his investigation only after receiving a copy of Gnan's video several months later.

Rensel testified. He explained that he and Prentiss "pre-planned each location where [they] were going to go and look for the elk." N.T. 47; R.R. 19. On September 11, 2019, they went to the Kolovoski property where they saw the bull elk that was shot two days later. They did not shoot the elk on the first day because "the wind was wrong" and the elk "did not present himself for a shot." N.T. 46; R.R. 19. On September 12, 2019, they went back to the same area and saw elk traveling towards the "large field on the Kolovoski property." N.T. 47; R.R. 19. On September 13, 2019, Rensel and Prentiss first went to the Hoover property where

4

they saw two smaller bull elk, which they chose not to take.  Instead, they continued hunting.

Rensel testified as follows:

[Counsel:] . . . And did you then go to another site?

[Rensel:] Yes.  It was about eight miles away, was the Kolovoski property.

[Counsel:] Okay.

[Rensel:] *And knowing that* [*the elks*] *were traveling toward the large field the night before, not knowing if the big bull was there, we parked alongside that road and were going to access it from the far end, come up towards that field through that little access road*.

[Counsel:] That second location you went to, was that pre-planned/pre-determined?

[Rensel:] Yes.

. . . .

[Counsel:] So tell the Court what happened as you were going up to that location.

[Rensel:] We came across Oak Hill Church Road coming from Quehanna Highway.  We come to a T on Hoffman Road, I believe that it is there, made a left.  *And at that point Mr. Couteret came up and said he had heard elk.  I pulled over, as I was going to anyway*.

. . . .

[Counsel:] Had you expected to see Mr. Couteret at that point at that location?

[Rensel:] Sometimes we have – *he knew I was going there, and he showed up knowing that I was going to be there.  That's all.*

[Counsel:] But there was no preplanning that he was going to meet you?

[Rensel:] No, no. We went there knowing we were going to the Kolovoski property.

5

[Counsel:] *Did you park where you intended to park?*

[Rensel:] Yes.

N.T. 48-49; R.R. 19-20 (emphasis added). Rensel stated that he did not see any elk while in his vehicle or hear any "bugling." N.T. 56-57; R.R. 21-22. Rensel explained that because Prentiss had "physical limitations" and "walked with a cane[,]" they were "limited to how far he can go and how fast he can go." N.T. 50; R.R. 20. Rensel testified that the property where they "had actually harvested the animal" belonged to "Mr. Hoffman," and they paid him a fee for harvesting. N.T. 51; R.R. 20.

Prentiss testified on his behalf. He explained that Elk County Outfitters picked places to hunt where he "can get out and just get into wherever [they are] going to hunt because [he] can't walk up the mountains and down the other side like they do with the normal hunt." N.T. 60; R.R. 22. The plan for September 13, 2019, was to "try another spot" before going back to the "original property [they] hunted on the past two days," *i.e.*, the Kolovoski property. N.T. 61; R.R. 23. Prentiss testified that they went back to the Kolovoski property because he "liked the size of the bull that [he had] seen the first day when [they] were there" and believed it might "be hanging out" there. N.T. 68; R.R. 24. With respect to the shooting in question, Prentiss testified that he did not load his rifle until he "stepped on to the other side" of the road where they had parked. N.T. 63; R.R. 23.

**Trial Court Decision**

By order of December 7, 2020, the trial court found Prentiss guilty of the charges under Sections 2307(a) and 2504(a) of the Game Code and sentenced him to pay total fines of $1,650, plus costs of prosecution, and to pay "replacement costs" of $1,666.68 to the Commonwealth. Trial Court Order, 12/7/2020.

6

In its opinion, the trial court rejected Prentiss' argument that the citation for violation of Section 2307(a) of the Game Code did not satisfy Pennsylvania Rule of Criminal Procedure 403(A)(6). The court found that "looking at the citations [as a whole]," it provided sufficient notice of the nature of the offense. Trial Court Op. at 3; R.R. 29. Accordingly, the trial court refused to dismiss the charge.

The trial court next considered the charge for violation of Section 2504(a) of the Game Code, which prohibits shooting at a wild animal "within 25 yards of the traveled portion of the public highway" after "alighting from a motor vehicle[.]" 34 Pa. C.S. §2504(a). Prentiss shot the bull elk while standing approximately 10 feet from the edge of the public highway and within 2 minutes of leaving his vehicle. Distinguishing Prentiss' conduct from that which was held lawful in *Commonwealth v. Payne*, 995 A.2d 1239 (Pa. Super. 2010), the trial court concluded that Prentiss engaged in unlawful "road hunting," which is "dangerous behavior to other users of the highway" and prohibited under Section 2504(a) of the Game Code. Trial Court Op. at 5; R.R. 31. Conceding that the "[c]ourts have yet to determine a bright[-]line rule of road hunting," the trial court nevertheless declined to apply the rule of lenity against the Commonwealth. Trial Court Op. at 7; R.R. 33.

Prentiss appealed to this Court.

## Appeal

On appeal,[3] Prentiss raises three issues for our consideration, which we combine into two for clarity. First, Prentiss argues that the trial court erred by not

---

[3] "Our standard of review when evaluating the sufficiency of the evidence in a conviction for a summary offense is whether, viewing all the evidence admitted at trial, together with all reasonable inferences therefrom, in the light most favorable to the Commonwealth, the trier of fact could have found that each element of the [offense] charged was supported by evidence and inferences sufficient in law to prove guilt beyond a reasonable doubt." *Commonwealth v. Austin*, 846 A.2d

7

dismissing the Section 2307(a) charge because the citation did not allege the basic elements of the offense and, thus, failed to satisfy the requirements of Pennsylvania Rule of Criminal Procedure 403(A)(6). Second, Prentiss argues that the trial court erred in holding the Commonwealth's evidence sufficient to convict him of "road hunting" as prohibited by Section 2504(a). Alternatively, Prentiss contends the trial court was required, and failed, to apply the rule of lenity against the Commonwealth because the "road hunting" provisions in the Game Code are unclear, as acknowledged by the trial court. We address the issues *seriatim*.

## Section 2307(a) of the Game Code

Under the Pennsylvania Rules of Criminal Procedure, a citation for violation of the Game Code must provide notice of the offense. *See* PA.R.CRIM.P. 403(A)(6). Relying on this Court's decision in *Commonwealth v. Redovan*, 227 A.3d 453 (Pa. Cmwlth. 2020), Prentiss argues that his citation was "fatally defective" on the Section 2307(a) charge, because it contained only a "boilerplate recitation of the statute" without a specific reference to which provision of the Game Code was relevant to the charge of unlawful possession. Prentiss Brief at 13. As such, it did set forth the basic elements of the offense.

The Commonwealth responds that its citation was adequate because it recited the date, approximate time, and location of the bull elk incident. In any case, the Commonwealth contends that Prentiss did not suffer "actual prejudice," which is required for a summary citation to be dismissed for defects therein. Commonwealth Brief at 6 (citing *Borough of Walnutport v. Dennis*, 114 A.3d 11, 21 (Pa. Cmwlth. 2015)).

---

798, 800 n.2 (Pa. Cmwlth. 2004). In reviewing a question of statutory construction, our scope of review is plenary, and our standard of review is *de novo*. *Spahn v. Zoning Board of Adjustment*, 977 A.2d 1132, 1142 (Pa. 2009).

Article I, Section 9 of the Pennsylvania Constitution provides, "[i]n all criminal prosecutions the accused hath a right . . . to demand the nature and cause of the accusation against him[.]" PA. CONST. art. I, §9. Pennsylvania Rule of Criminal Procedure 403(A)(6) states:

> (A) Every citation shall contain:
>
> . . . .
>
> > (6) a citation of the *specific section and subsection of the statute* or ordinance allegedly violated, *together with a summary of the facts sufficient to advise the defendant of the nature of the offense charged*[.]

PA.R.CRIM.P. 403(A)(6) (emphasis added).

"[T]he essential elements of a summary offense must be set forth in the citation so that the defendant has fair notice of the nature of the unlawful act for which he is charged." *Commonwealth v. Nicely*, 988 A.2d 799, 806 (Pa. Cmwlth. 2010) (quoting *Commonwealth v. Borriello*, 696 A.2d 1215, 1217 (Pa. Cmwlth. 1997)). Stated otherwise, a "defendant should not have to guess which charges have been placed against him. If charges in an indictment are not clear and explicit a defendant cannot properly defend against them." *Borough of Walnutport*, 114 A.3d at 20 (quoting *Commonwealth v. Wolfe*, 289 A.2d 153, 155 (Pa. Super. 1972)).

A defect in a criminal citation is not necessarily fatal to the Commonwealth's prosecution. The Pennsylvania Rules of Criminal Procedure provide as follows:

> *A defendant shall not be discharged nor shall a case be dismissed because of a defect in the form or content of a* complaint, *citation*, summons, or warrant, or a defect in the procedures of these rules, *unless* the defendant raises the defect before the conclusion of the trial in a summary case or before the conclusion of the preliminary hearing in a court case, *and the defect is prejudicial to the rights of the defendant.*

9

PA.R.CRIM.P. 109 (emphasis added).  A defect is not prejudicial to the rights of the defendant "where the content of the citation, taken as a whole, sufficiently notifies the defendant as to the nature of the summary offense or where the defect or *omission does not involve the basic elements of the offense charged*."  *Borough of Walnutport*, 114 A.3d at 21 (emphasis added).

In *Redovan*, 227 A.3d 453, the defendant was charged with hunting over bait, in violation of Section 2308(a)(8) of the Game Code,[4] which prohibits "the use of any artificial or natural bait, salt, chemical, mineral or other food as an enticement for game or wildlife . . . ."  *Redovan*, 227 A.3d at 455.  The citation did not specify the type of bait used.  After trial, the court found the defendant guilty of hunting over bait that consisted of corn.

On appeal, we reversed the conviction.  We held, *inter alia*, that the citation did not conform to PA.R.CRIM.P. 403(A)(6) because it did not specify

---

[4] It states:

> **(a) General rule.--**Except as otherwise provided in this title, it is unlawful for any person to hunt or aid, abet, assist or conspire to hunt any game or wildlife through the use of:
>
> . . . .
>
> > (8) *Any artificial or natural bait, hay, grain, fruit, nut, salt, chemical, mineral or other food as an enticement for game or wildlife*, regardless of kind and quantity, or take advantage of any such area or food or bait prior to 30 days after the removal of such material and its residue. Nothing contained in this subsection shall pertain to normal or accepted farming, habitat management practices, oil and gas drilling, mining, forest management activities or other legitimate commercial or industrial practices. Upon discovery of such baited areas, whether prosecution is contemplated or not, the commission may cause a reasonable area surrounding the enticement to be posted against hunting or taking game or wildlife. The posters shall remain for 30 days after complete removal of the bait.

34 Pa. C.S. §2308(a)(8) (emphasis added).

10

whether the illegal conduct was for the use of salt or corn as bait. The game warden had indicated to the defendant that he would be cited for using salt as bait. *Redovan*, 227 A.3d at 457. However, he was convicted of using corn.

In *Commonwealth v. Halstead*, 79 A.3d 1240 (Pa. Cmwlth. 2013), this Court considered a challenge to a citation for defective windows and other structures in violation of a property maintenance ordinance. We held that the citation provided adequate notice for the windows but not for other structures, such as deteriorated roof joists, because they were not specified in the citation. We reversed the conviction.

By contrast, in *Borough of Walnutport*, 114 A.3d 11, this Court affirmed the conviction for nonpayment of garbage removal service invoices in violation of the municipal solid waste ordinance. The property owner challenged the citation as defective because it did not identify the date of the offense; whether he resided at the property; or whether he used the garbage removal service. We rejected this challenge. The citation stated that "the defendant failed to pay the garbage bill for the garbage removal services provided to the property[,]" and the ordinance did not require residency or actual use of the service.[5] *Id*. at 21 (citation omitted). The lack of a date in the citation was held not prejudicial because the record established that the borough had mailed the invoices and posted notices of

---

[5] The municipal solid waste ordinance stated as follows:

> The legal and/or equitable *owner(s) of the real estate containing a residential establishment shall be responsible to pay*, and shall pay, the fees, fines and penalties as may be imposed pursuant to the provisions of this article. A residential establishment is exempt from this section only if it is an unoccupied dwelling unit as defined pursuant to this article.

*Borough of Walnutport*, 114 A.3d at 21 (quoting Walnutport Borough Solid Waste Ordinance, Ordinance No. 2011-05, Section 16, enacted May 12, 2011) (emphasis added).

the fees owed on the door of the property. Lest there be any doubt, the owner stipulated that he did not pay the invoices in question.

Section 2307(a) of the Game Code sets forth the elements of the offense as follows:

> **(a) General rule.--***It is unlawful for any person to aid, abet, attempt or conspire to hunt for or take or possess, use, transport or conceal* any game or wildlife unlawfully taken or not properly marked or any part thereof, *or to hunt for, trap, take, kill, transport, conceal, possess or use any game or wildlife contrary to the provisions of this title.*

34 Pa. C.S. §2307(a) (emphasis added). Section 2307(a) lists numerous activities, from aiding and abetting to trapping, transporting, concealing, possessing, and using game in a manner "contrary to the provisions of this title." *Id*. These activities, on their own, are not unlawful under Section 2307(a); rather, these activities must be unlawful under another provision of the Game Code in order for the Commonwealth to establish a violation of Section 2307(a). Stated otherwise, Section 2307(a) depends upon another provision of the Game Code to have efficacy. It does not stand alone.

Here, the Game Commission's citation was based, presumably, upon Prentiss' taking or possession of game "contrary to the provisions of this title." 34 Pa. C.S. §2307(a). Prentiss argues that the citation was inadequate because it did not specify which provision "of this title" was implicated and whether the alleged unlawful conduct was aiding, concealing, transporting, possessing, or hunting. We agree.

The Game Commission used a standard citation form with a number of boxes to be filled out. On the Section 2307(a) citation, boxes 20-21 state as follows:

Charge[:] Unlawful Taking or Possession of Game or Wildlife

12

Nature of Offense[:] The defendant did unlawfully, aid, abet, attempt or conspire to hunt for or take or possess, use, transport or conceal any game or wildlife unlawfully taken or not properly marked or any part thereof or hunt for, take, kill, transport, possess or use game or wildlife *contrary to the title*. To wit: *bull elk*.

R.R. 4 (emphasis added). Other boxes on the citation form were filled out as follows:

Date of Offense[:] 09/13/2019

Location of Offense[:] Intersection of Oak Hill Road & Paul Hoffman Road

Time[:] (Approx) 0724

County[:] Clearfield

City-Twp-Boro[:] Karthaus

34 Pa. C.S. Sec. 2307 Sub. Sec. (a)

Confidential Information Section[:] . . . . Commonwealth requesting replacement cost for resource as per 34 Pa. C.S. Section 925(l) and 58 Pa. Code Section 131.8 - $5,000[.] Evidence seizure tag #48527-antlers/meat & evidence seizure tag # 83529-(2) video flash drives depicting hunt subject guided by Elk County Outfitters guide Kim Rensel & Gary Couteret

R.R. 4.

The citation summarized the text of Section 2307(a) and added two words: "bull elk." R.R. 4. The citation then identified the place, date, and time of the bull elk incident and the Game Commission's seizure of "antlers/meat" and flash drives "depicting hunt subject." *Id*. However, as in *Redovan*, the citation lacked the requisite specificity. It did not specify the nature of the conduct, whether hunting, concealing, or transporting, and it did not identify the provisions "of this title" to which this conduct was "contrary." 34 Pa. C.S. §2307(a). Prentiss was left guessing.

13

The Commonwealth argues that Prentiss did not suffer prejudice. If Prentiss did not understand the Section 2307(a) charge before the magisterial district judge's hearing, he certainly understood the particulars by the time of the trial court hearing. We reject this argument, which reduces the magisterial district judge's hearing to a dress rehearsal. The Commonwealth's argument empties the citation of meaning and places no burden on the prosecution to set the bounds of its case in advance of the magisterial district judge's hearing.

Actual prejudice is found where the content of the citation does not notify the defendant "as to the nature of the summary offense" or where the defect or omission involves "the basic elements of the offense charged." *Borough of Walnutport*, 114 A.3d at 21. This is what occurred here. The citation for the Section 2307(a) charge did not inform Prentiss whether he aided, abetted, possessed, concealed, or transported game, and how this conduct was contrary to an unnamed provision "of this title." 34 Pa. C.S. §2307(a). The lacunae in Prentiss' citation were neither trivial nor irrelevant, as in *Borough of Walnutport*.

We conclude, and hold, that as in *Redovan*, 227 A.3d 453, the citation for violation of Section 2307(a) of the Game Code was inadequate under PA.R.CRIM.P. 403(A)(6). We reverse the trial court's determination that Prentiss violated Section 2307(a) of the Game Code because this charge should have been dismissed.

### Section 2504(a) of the Game Code

Prentiss argues, next, that the trial court erred by convicting him of "road hunting" under Section 2504(a) of the Game Code. Relying on the Superior Court's holding in *Payne*, 995 A.2d 1239, Prentiss argues that the Commonwealth did not prove a violation of Section 2504(a). It did not show that he "quickly"

14

emerged from the vehicle and "scramble[d]" to "shoot at game observed from the highway," which is the conduct proscribed by Section 2504(a), as it has been construed in *Payne*, 995 A.2d at 1241-42. Prentiss and his party did not observe any elk from their vehicle; they parked the vehicle at the pre-planned location; and they did not see any elk until they crossed the highway and entered the field. Further, no one was in the vicinity, let alone traveling on the two-lane, unpaved township road, when Prentiss fired his rifle.

The Commonwealth concedes that *Payne* involved a hunter shooting a wild animal less than 25 yards from the road but argues that *Payne* is distinguishable. There, approximately 45 minutes transpired between the defendant's exit from the vehicle and his shot at the deer. Here, Prentiss and Rensel "immediately pull[ed] over" after receiving information from Couteret that game was in the area, and Prentiss took his first shot at the elk approximately two minutes after leaving the vehicle. Commonwealth Brief at 16.

We start with a review of Section 2504 of the Game Code. It states as follows:

> **(a) General rule.--***It is unlawful for any person to shoot* at any game or wildlife while it is on a public highway or on a highway open to use or used by the public or to shoot across a public highway or a highway or roadway open to use or used by the public *unless the line of fire is high enough above the elevation of the highway to preclude any danger* to the users of the highway. *It shall be unlawful for any person, after alighting from a motor vehicle being driven on or stopped on or along a public highway or road open to public travel, to shoot at any wild bird or wild animal while the person doing the shooting is within 25 yards of the traveled portion of the public highway or road open to public travel.*

> **(b) Penalty.--**A violation of this section is a summary offense of the fourth degree.

15

34 Pa. C.S. §2504 (emphasis added). Here, Prentiss was charged for conduct set forth in the second sentence, which prohibits a hunter "after alighting from a motor vehicle being driven on or stopped on or along a public highway . . . to shoot at any . . . wild animal while the person doing the shooting is within 25 yards of the traveled portion of the public highway or road open to public travel." 34 Pa. C.S. §2504(a).

In *Payne*, the defendant parked his vehicle along a public road, walked 75 feet, and took up a position 18 feet from the edge of the road. From that position, he shot a deer "about 35 feet 'into the woods.'" *Payne*, 995 A.2d at 1240 (citation omitted). Forty-five minutes elapsed between the parking of the hunter's vehicle and his shot. The defendant appealed his conviction to the Superior Court, arguing that Section 2504(a) permits a hunter to discharge his weapon within 25 yards of the public road where, as in his case, the hunter has not recently alighted from a motor vehicle.

The Superior Court sustained the appeal, holding that the trial court erred in its interpretation of Section 2504(a). It held that the defendant's conduct did not constitute alighting from a motor vehicle to shoot a wild animal, which is the conduct Section 2504(a) of the Game Code prohibits. *Payne*, 995 A.2d at 1242. Reading the two sentences of Section 2504(a) together, the Superior Court reasoned as follows:

> In interpreting the second sentence of section 2504, we must conclude that the General Assembly intended to alleviate the same concerns, *i.e.*, shooting on or across highways in a manner that poses a danger to users of the highway. The plain language of the second sentence of section 2504(a) indicates an intent by the General Assembly to preclude the practice of road hunting, *i.e.*, the situation in which a hunter or hunters who are driving or riding in a vehicle on a public highway spot wildlife or game, alight from the vehicle, and shoot at the game when the hunter is "within 25 yards of the traveled portion of the public highway

16

. . . ." 34 Pa. C.S.[] §2504(a). *Although the General Assembly did not use language setting forth a time limit on the word "alighting," the clear tenor of the language was to prohibit road hunting, which, as described, is a reckless practice that may endanger users of the highway.* A hunter who quickly emerges from a vehicle, and scrambles to shoot at game observed from the highway, while within 25 yards of the highway, engages in dangerous behavior to other users of the highway.

*Payne*, 995 A.2d at 1241-42 (emphasis added). Because the defendant "shot the deer while it was on the same side of the road as where [he] was standing," the defendant did not shoot over the highway. *Id*. at 1242. Further, the defendant's conduct "did not constitute road hunting, and did not endanger any user of the highway, as section 2504 requires." *Id*.

Prentiss argues that *Payne* established that to violate Section 2504, the defendant must "immediately fire a shot upon exiting the vehicle." Prentiss Brief at 18. Stated otherwise, a person may "legally hunt within 25 yards of the traveled portion of a public highway *if he has not recently alighted from a motor vehicle*." *Payne*, 995 A.2d at 1240 (emphasis added). Prentiss argues that the Commonwealth's evidence did not make this showing.

The Superior Court construed Section 2504(a) to prohibit "reckless" hunting, where a hunter "quickly emerges from a vehicle, and scrambles to shoot at game observed from the highway," which endangers those on the highway. *Payne*, 995 A.2d at 1241-42. *Payne* is the only appellate court decision to construe Section 2504(a) of the Game Code and has been in effect since 2010. The Superior Court employed several well-established principles of statutory construction in reaching its conclusion. It held that both sentences in Section 2504(a) must be construed together and, as such, establish the legislative intent to preclude any "danger to the users of the highway." *Payne*, 995 A.2d at 1241. Because the Superior Court found

17

the words of Section 2504(a) "not explicit," it was guided by the principles set forth in the Statutory Construction Act of 1972 appropriate for that situation. *Payne*, 995 A.2d at 1240. *See also* 1 Pa. C.S. §1921(c).[6] Accordingly, the Superior Court concluded that "the object to be attained" by Section 2504(a) of the Game Code was the prohibition of "road hunting" that can "endanger users of the highway." *Payne*, 995 A.2d at 1242.

Using the Superior Court's construction of Section 2504(a), Prentiss argues that he did not endanger anyone on the township road, and the Game Commission does not so argue. However, we reject the Superior Court's construction of Section 2504(a) as permitting a hunter to be standing within 25 yards from a road when he takes a shot at a wild animal, at least in some circumstances. To the contrary, we believe Section 2504(a) prohibits a hunter so positioned from shooting at a wild animal without regard to how much time has elapsed since the hunter has alighted from a vehicle.

Section 2504(a) of the Game Code does not limit its proscription to "reckless" hunting, where a hunter "quickly emerges from a vehicle, and scrambles

---

[6] It states:

> (c) *When the words of the statute are not explicit*, the intention of the General Assembly may be ascertained by considering, among other matters:
>
> > (1) The occasion and necessity for the statute.
> > (2) The circumstances under which it was enacted.
> > (3) The mischief to be remedied.
> > (4) The object to be attained.
> > (5) The former law, if any, including other statutes upon the same or similar subjects.
> > (6) The consequences of a particular interpretation.
> > (7) The contemporaneous legislative history.
> > (8) Legislative and administrative interpretations of such statute.

1 Pa. C.S. §1921(c) (emphasis added).

18

to shoot at game observed from the highway, while within 25 yards of the highway[.]" *Payne*, 995 A.2d at 1241-42. While preventing danger to "users of the highway" may be one object to be attained, Section 2504(a) does not base its proscription on actual endangerment of any user of the highway.

Prentiss argues that the rule of lenity requires that this Court set aside the conviction. He contends that Section 2504(a) is not clear on what conduct is proscribed and, thus, must be strictly construed in favor of the defendant. The Statutory Construction Act of 1972 provides that penal provisions "shall be strictly construed[.]" 1 Pa. C.S. §1928(b)(1). Consistent with this statutory requirement is the common law rule of lenity, which provides that

> [a]mbiguities should and will be construed *against the government*. This principle has its foundation in the rule of lenity that provides that any ambiguity in a criminal statute will be construed in favor of the defendant. The rule of lenity requires a *clear and unequivocal warning in language that people generally would understand*, as to what actions would expose them to liability for penalties and what the penalties would be.

*McGrath v. Bureau of Professional and Occupational Affairs*, *State Board of Nursing*, 146 A.3d 310, 316 (Pa. Cmwlth. 2016) (quoting *Richards v. Pennsylvania Board of Probation and Parole*, 20 A.3d 596, 600 (Pa. Cmwlth. 2011) (emphasis in original and added)).

In *Commonwealth v. Rosario*, 294 A.3d 338 (Pa. 2023), our Supreme Court applied both statutory construction principles and the rule of lenity to hold that a defendant may not be penalized for violation of a probation sentence he has not begun to serve. In reaching this conclusion, the Supreme Court acknowledged that the rule of lenity has limits. It does not require "that the words of a penal statute be given their narrowest possible meaning or that legislative intent be disregarded." *Id.*

19

at 350 (quoting *Commonwealth v. Nevels*, 235 A.3d 1101, 1105 (Pa. 2020)). Courts must first use the tools of statutory construction when considering the meaning of a penal provision. The rule of lenity applies only "at the end of the process of construing what [the legislature] has expressed, [if] there is grievous ambiguity or uncertainty in the statute." *Rosario*, 294 A.3d at 350 (quoting *Shaw v. United States*, 580 U.S. 63, 71 (2016)).

We conclude that after using applicable principles of statutory construction, we are not left with a "grievous ambiguity or uncertainty." *Rosario*, 294 A.3d at 350. The phrase "alighting from a motor vehicle" adds little to the prohibition against shooting "within 25 yards of the traveled portion of the public highway or road open to public travel." 34 Pa. C.S. §2504(a). However, the phrase does not render Section 2504(a) sufficiently ambiguous or uncertain to trigger the rule of lenity.

We hold that Section 2504(a) states a bright-line rule. It prohibits any person, after exiting a motor vehicle at any time earlier that day, from shooting at a game animal while positioned within 25 yards of the traveled portion of the public road. 34 Pa. C.S. §2504(a). There are no exceptions for the passage of some appropriate length of time after the hunter leaves the vehicle or where his shot does not endanger anyone on the road. Here, after alighting from his vehicle, Prentiss was standing within 25 yards from the edge of the road when he shot the elk. This violated Section 2504(a) of the Game Code. Accordingly, we affirm the trial court's order that the Commonwealth's evidence demonstrated that Prentiss violated Section 2504(a) of the Game Code.

**Conclusion**

For the above-stated reasons, we reverse the trial court's order on the violation of Section 2307(a) of the Game Code and affirm its order on the violation of Section 2504(a) of the Game Code. Because this Court adopts a new interpretation of Section 2504(a), which is contrary to the Superior Court's longstanding interpretation in *Payne*, we remand the matter to the trial court to consider the appropriate sentence, if any, for Prentiss' violation of Section 2504(a) of the Game Code.

_____
MARY HANNAH LEAVITT, President Judge Emerita

21

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Commonwealth of Pennsylvania     :
                                 :
          v.                     :          No. 415 C.D. 2021
                                   :
Richard A. Prentiss,              :
                  Appellant    :

## **O R D E R**

AND NOW, this 3rd day of May, 2024, the order of the Court of Common Pleas of Clearfield County in the above-captioned matter, dated December 7, 2020, convicting Richard A. Prentiss of violating Section 2307(a) of the Game and Wildlife Code, 34 Pa. C.S. §2307(a), is REVERSED. The order of same date convicting Richard A. Prentiss of violating Section 2504(a) of the Game and Wildlife Code, 34 Pa. C.S. §2504(a), is AFFIRMED, and the matter is REMANDED for further proceedings consistent with the Court's opinion.

Jurisdiction relinquished.

_____
MARY HANNAH LEAVITT, President Judge Emerita